968 F.2d 1215
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ISLAND CREEK CORPORATION, Plaintiff-Appellant,
v.
ANKER ENERGY CORPORATION; The Travelers Indemnity Company,
Defendants-Appellees.
 No. 91-5968.
 United States Court of Appeals, Sixth Circuit.
 July 10, 1992.
 
 Before JONES and GUY, Circuit Judges, KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Island Creek Corporation, appeals the district court's entry of partial summary judgment in favor of defendants, Anker Energy Corporation ("Anker Energy") and Travelers Indemnity Company ("Travelers") (collectively, "defendants"), in this action for breach of contract arising out of Anker Energy's failure to deliver coal pursuant to a contract. For the reasons that follow, we reverse.
 
 
 2
 * In the fall of 1988, Island Creek and Anker Energy negotiated a Coal Sales Agreement ("Agreement") according to which Anker Energy agreed to sell and deliver to Island Creek an average of 10,000 tons of coal per week over a fifty-two week period, with a two-week outage, for a total of 500,000 tons of coal. Deliveries were to begin on January 1, 1989, and the parties agreed upon a price of $25.89 per ton, subject to adjustments for variations in the coal's quality. Island Creek acquired the coal for resale to the Tennessee Valley Authority ("TVA").
 
 
 3
 The present dispute centers on Article XI of the Agreement, denominated "Performance Bond," which states as follows:
 
 
 4
 Attached hereto and made a part hereof is a Performance Bond (the "Performance Bond") issued in favor of Purchaser [Island Creek] by the Traveler's Insurance [sic] Company. Purchaser shall have the right to draw upon the Performance Bond in accordance with the terms and conditions therein upon the occurrence of events and in the amounts as follows:
 
 
 5
 1. The amount of $1.50 per ton of coal which is not delivered by Seller during any period of suspension resulting from failure of Seller to meet quality specifications under Article V hereof.
 
 
 6
 2. The amount of $1.50 per ton for each ton of coal in any barge which is rejected by Purchaser under Article V, unless satisfactorily replaced by Seller.
 
 
 7
 3. If Seller fails to deliver an average of 10,000 tons per week for each four week period of this Agreement, and such failure was not excused by force majeure[1] or did not result from the failure of Purchaser to schedule or accept deliveries, then Purchaser may draw the amount of $1.50 per ton, for each ton of the deficit in accordance with Article II.
 
 
 8
 J.A. at 18. No other provision in the Agreement addresses whether, or to what extent, a non-performing party may be liable for damages upon breach. Article XIII of the Agreement provides that "[t]his Agreement and attachments constitutes [sic] the entire understanding and agreement of the parties and may not be changed except by writing signed by both parties." Id. at 19. Article XIII also instructs that the Agreement shall be interpreted in accordance with the laws of Kentucky.
 
 
 9
 Pursuant to Article XI, Travelers issued a Supply Contract Bond in favor of Island Creek in the maximum amount of $750,000. This amount represented a figure equal to the total tons of coal to be delivered by Anker Energy under the Agreement (500,000) multiplied by $1.50.
 
 
 10
 The parties currently dispute the intent behind Article XI and its performance-bond requirement. Island Creek argues that neither it nor its representatives ever viewed the bond as adequate to compensate Island Creek fully in the event of a breach by Anker Energy, and that the provision was intended solely to convey to Anker Energy the importance of the strict delivery schedule imposed upon Island Creek by the TVA. Defendants counter that all parties understood Article XI to be a liquidated-damages provision, and that the bond set the upper limit of defendants' liability under the Agreement.
 
 
 11
 The parties do not dispute that, during the term of the Agreement, Anker Energy delivered approximately 346,912 tons of coal, leaving a final deficiency of approximately 153,088 tons.[2] As a result of Anker Energy's nonperformance, Island Creek asserts that it was forced to enter the spot coal market to cover the deficiencies, and that it consequently paid between six and seven dollars more per ton of coal than it would have paid under the Agreement. As a result, Island Creek claims, Anker Energy's nonperformance caused it to sustain actual out-of-pocket losses of $1,104,082.72.
 
 
 12
 On December 15, 1989, Island Creek notified defendants that it intended to demand payment in full on the bond. Travelers refused to tender the maximum bond amount. Consequently, on December 28, 1989, Island Creek filed a two-count complaint in district court alleging, in count one, that Anker Energy had breached the terms of the Agreement by failing to deliver the specified amount of coal to Island Creek and, in count two, that Travelers had breached the terms of the performance bond.
 
 
 13
 After discovery was taken, defendants filed a motion for partial summary judgment on February 14, 1991. Island Creek filed a memorandum in opposition to defendants' motion for summary judgment, to which defendants replied. On March 14, 1991, the district court issued a memorandum opinion and order granting defendants' motion for partial summary judgment. The court concluded that Article XI of the Agreement constituted a binding liquidated-damages clause limiting Island Creek's recovery for Anker Energy's breach to the terms and conditions of Article XI and the bond. Multiplying the 153,087.95 tons of coal that Anker Energy failed to deliver by the $1.50 figure set forth in Article XI, the district court awarded Island Creek $229,631.92, offset for interest and costs. This timely appeal followed.[3]
 
 II
 
 14
 Island Creek's principal contention on appeal is that the district court erred in concluding that Article XI constituted a liquidated damages clause setting forth the maximum amount of Island Creek's recovery under the Agreement. The district court, relying on Kentucky law, found that the parties intended Article XI to establish "a reasonable measure of compensation" should Anker Energy breach its delivery requirements under the Agreement, J.A. at 36, and, furthermore, that Article XI established the full amount recoverable by Island Creek.
 
 
 15
 Because Island Creek appeals from an order of summary judgment, our review is de novo. Vollrath v. Georgia-Pac. Corp., 899 F.2d 533, 534 (6th Cir.), cert. denied, 111 S.Ct. 345 (1990). In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the Supreme Court held that, in reviewing a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. Our review of the district court's interpretation of Kentucky law is plenary as well. See Salve Regina College v. Russell, 111 S.Ct. 1217, 1221 (1991). In determining state law, this court follows the law as announced by the state's supreme court. See Miles v. Kohli & Kaliher Assocs., 917 F.2d 235, 241 (6th Cir.1990). "Where the state supreme court has not spoken, our task is to discern, from all available sources, how that court would respond if confronted with the issue." Id.
 
 
 16
 Kentucky law expressly guarantees the right of parties to provide contractually for the liquidation or limitation of damages in the event of a party's breach:
 
 
 17
 Damages for breach by either party [to a contract] may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy.
 
 
 18
 Ky.Rev.Stat.Ann. § 355.2-718(1) (Baldwin 1983). This provision is qualified in section 355.2-719, which states that, while a contract may limit or alter the measure of damages otherwise recoverable by law, "resort to a remedy as provided [by a contract] is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy." Id. § 355.2-719(1)(b). The commentary to this section adds that "[s]ubsection (1)(b) creates a presumption that clauses prescribing remedies are cumulative rather than exclusive. If the parties intend the term to describe the sole remedy under the contract, this must be clearly expressed." Id. comment.[4]
 
 
 19
 The district court concluded, as a matter of law, that Article XI was a liquidated damages clause. While it is true, under Kentucky common law, that interpretation of a contract is generally an issue of law, see Fidelity & Deposit Co. v. Jones, 75 S.W.2d 1057, 1060 (Ky.1934), the central purpose of contractual interpretation is to identify the parties' intent at the time of the contract's formation, see Wilcox v. Wilcox, 406 S.W.2d 152, 153 (Ky.1966). Thus, where contractual language is ambiguous, the court must determine the parties' intent "from the contract as a whole, and in doing so will consider the subject matter of the contract, the situation of the parties and the conditions under which the contract was written." Whitlow v. Whitlow, 267 S.W.2d 739, 740 (Ky.1954). Where the contract is open to more than one reasonable interpretation, however, determination of the parties' intent is for the trier of fact. Cook United, Inc. v. Waits, 512 S.W.2d 493, 495 (Ky.1974). As Kentucky's highest court has summarized,
 
 
 20
 [t]he interpretation of an integrated agreement is directed to the meaning of the terms of the writings in the light of the circumstances. The question of interpretation in these circumstances is to be determined by the trier of fact if it depends on a choice among reasonable inferences to be drawn on the extrinsic evidence admissible apart from the application of the parol evidence rule. Otherwise, the question of interpretation is a question of law.
 
 
 21
 Id.
 
 
 22
 In the instant case, the text of the contract is ambiguous as to whether the parties intended Article XI to be a liquidated-damages clause at the time they entered into the contract. As Island Creek points out, neither Article XI nor any other provision in the Agreement expressly limited Island Creek to recovery under the performance bond. Defendants assert that the parties' failure to designate Article XI as a liquidated-damages clause does not render it legally incapable of performing that function. Defendants' position finds support in Fidelity & Deposit, wherein Kentucky's highest court held that bonds issued by appellants constituted liquidated damages despite the absence of contract language denominating the bonds as such. 75 S.W.2d at 1058. While we agree with defendants' position, we believe that the absence of express contractual language indicating that Article XI defined and limited Island Creek's recovery under the Agreement leaves the parties' intent with respect to this provision in considerable doubt.
 
 
 23
 Island Creek maintains that Article XI was intended solely to impress upon Anker Energy the importance of the contract's strict delivery requirements and was not intended to approximate the injury Island Creek might incur as a result of Anker Energy's breach. In support of its interpretation, Island Creek has come forth with probative evidence suggesting that it did not intend Article XI to serve as a liquidated-damages provision. First, Bruce Waespe, the Island Creek representative responsible for negotiating the Agreement, testified that Article XI was not intended to cover damages in the event of Anker Energy's breach but, rather, was intended to convey to Anker Energy the seriousness of Island Creek's strict delivery requirements to TVA. Second, on December 15, 1989, Donald Denecke, Island Creek's Vice President for Steam Coal Sales, sent letters to defendants requesting full payment from Travelers under the performance bond and demanding compensation for "any and all damages, including incidental and consequential damages" from Anker Energy.[5] J.A. at 26. Construing this evidence in a light most favorable to plaintiff, we believe that Island Creek has successfully raised a genuine issue as to whether the parties, at the time of the Agreement's formation, intended Article XI to serve as a liquidated damages clause or, instead, viewed it as a means to ensure Anker Energy's timely performance of its contractual obligations.
 
 
 24
 At oral argument, defendants argued that, because Article XI covers every scenario under which Anker Creek could have breached its obligations under the Agreement, the parties clearly intended that provision to serve as a liquidated-damages clause. We fail to perceive the logic behind this argument. Even if we were to concede that Article XI covers every type of breach to which Island Creek could have been subject, this in no way resolves the central dispute raised in this appeal--namely, whether the parties also intended the amounts set forth in Article XI to set an absolute limit on Island Creek's recovery under the Agreement.[6]
 
 
 25
 In sum, Island Creek has raised a material issue of fact as to whether the parties, at the time they entered into the Agreement, intended Article XI to serve as a liquidated-damages provision limiting Anker Energy's liability under the Agreement. If, upon remand, the trier of fact determines that Article XI was not intended to serve as a liquidated-damages clause, Island Creek will be entitled to offer proof as to the extent of the damages incurred as a result of Anker Energy's breach.[7]
 
 III
 
 26
 For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.
 
 
 
 [1]
 Article XII of the Agreement defines "force majeure" as any cause beyond the reasonable control of the non-performing party and sets forth, by way of example, "floods, fires, accidents, strikes, major breakdowns of equipment, act of any government and shortage of carrier's equipment." J.A. at 19
 
 
 [2]
 For purposes of the present appeal, defendants concede that the deficiency was not excused within the meaning of the Agreement
 
 
 [3]
 Although defendants moved for, and the district court granted, partial rather than full summary judgment, the court also indicated in its entry of judgment that "[t]his is a final judgment and there is no reason for delay." Id. at 39. Accordingly, we construe the district court's order as a final and appealable judgment
 
 
 [4]
 We recognize that, despite this statutory directive, Kentucky's highest court has indicated that a liquidated-damages clause may provide the upper limit of recovery even if this is not expressly stated in the contract. See Coca-Cola Bottling Works (Thomas) v. Hazard Coca-Cola Bottling Works, 450 S.W.2d 515 (Ky.1970). In Coca-Cola Bottling, the court held that a liquidated-damages clause provided the upper limit of recovery for the non-breaching party absent evidence that the contract contained language to that effect. See id. at 516-17, 519. In so holding, the Court quoted the following passage from American Jurisprudence, Second:
 "The effect of a clause for stipulated damages in a contract is to substitute the amount agreed upon as liquidated damages for the actual damages resulting from breach of the contract, and thereby prevents a controversy between the parties as to the amount of damages. If a provision is construed to be one for liquidated damages, the sum stipulated forms, in general, the measure of damages in case of a breach, and the recovery must be for that amount. No larger or smaller sum can be awarded even though the actual loss may be greater or less."
 Id. at 519 (quoting 22 Am.Jur.2d Damages § 235 (1988)). Because we conclude, infra, that the district court erred in holding, as a matter of law, that Article XI is a liquidated damages clause, we express no opinion as to this apparent inconsistency between Kentucky statutory and decisional law.
 
 
 [5]
 This evidence would not be barred under the parol evidence rule. The parol evidence rule prohibits the introduction of evidence intended to show that the contract did not express the true intent of the parties. The rule does not bar a party, however, from presenting evidence seeking to clarify an indefinite or ambiguous contractual term. See Rudd-Melikian, Inc. v. Merritt, 282 F.2d 924, 928 (6th Cir.1960); 3 Arthur L. Corbin, Corbin on Contracts § 579, at 412-13 (1960)
 
 
 [6]
 Defendants also submit that Island Creek initially elected to recover only under the performance bond, thereby waiving its right to pursue more traditional contract damages. Because the district court did not rely on this reasoning in granting summary judgment, we decline to do so as well
 
 
 [7]
 Because the parties apparently dispute the exact amount of damages incurred by Island Creek as a result of Anker Energy's breach, we believe it would be improvident at this juncture to resolve whether Article XI, if construed as a liquidated damages clause, would be enforceable. See Ky.Rev.Stat.Ann. § 355.2-718 comment. (Baldwin 1983) (noting that unreasonably small amount awarded under liquidated damages clause might be unconscionable)