ENTRY AND OPINION,
Appellants, 22810 Lakeshore Corp. ("Lakeshore"), James Brett and Donna Brett (the "Bretts"), appeal the decision of the trial court awarding damages against the Bretts in their personal capacities. Appellants also appeal the trial court awarding damages in excess of a liquidated damages provision. For the reasons that follow, we affirm the decisions of the trial court below.
In February 1996, Lakeshore and the Bretts, as individuals, filed a complaint against appellee, Xam, Inc. ("Xam"). The complaint set forth several claims, virtually all of which involved appellants' position that Xam committed various acts of breach, relating to Xam's offer to sell a tavern known as the SS Lounge, located in Euclid, Ohio. In response to the complaint, Xam filed its answer and counterclaim against each of the appellants.[1] The counterclaim specifically stated not only that Lakeshore breached certain contractual obligations, but, further, thatthe Bretts, as individuals, had failed to fulfill certain executory obligations pursuant to a purchase and management agreement (the "Purchase Agreement" and "Management Agreement"), which by integration, comprised the terms of the transaction between the parties. Appellants, together, filed their reply to the counterclaim and denied any liability to Xam under either agreement.
Following a bench trial, the court entered judgment against Xam on the original complaint and in favor of Lakeshore and the Bretts as individuals. Judgment was also entered in favor of Lakeshore and the Bretts on Xam's counterclaim and third-party complaint.
Xam filed an appeal ("Xam I") in which it argued that the trial court's judgments were against the manifest weight of the evidence because that evidence proved that Lakeshore and the Bretts had breached the agreements, not Xam. On appeal, this court, finding merit in Xam's argument, reversed the trial court and entered judgment in favor of "Xam on its counterclaim". The case was then remanded for a "determination of Xam's damages."[2]
On remand, the trial court accepted briefs and held a hearing on the issue of damages. By written order, the trial court entered judgment against Lakeshore and the Bretts, jointly and severally, in the amount of $37,629.29 with interest from October 19, 1998. Lakeshore and the Bretts filed a motion for new trial which was denied by the trial court.
Lakeshore and the Bretts filed this appeal in which they argue two assignments of error.
 ASSIGNMENT OF ERROR NO. 1: THE TRIAL COURT ERRED IN AWARDING DAMAGES AGAINST JAMES AND DONNA BRETT, IN THEIR PERSONAL CAPACITIES, FOR THEIR CORPORATION'S (I.E., LAKESHORE'S) BREACHES OF A `PURCHASE AGREEMENT' AND `MANAGEMENT AGREEMENT' WITH XAM, WHEN THE UNDISPUTED FACTS ESTABLISH THAT THE BRETTS WERE PARTIES ONLY TO A SINGLE SECTION OF THE 25-SECTION `PURCHASE AGREEMENT' AND THIS ONE SECTION WAS NOT IMPLICATED BY THE SUBJECT BREACHES, AND THEY WERE NOT PARTIES AT ALL TO THE MANAGEMENT AGREEMENT.
Appellants argue that the trial court erred in finding the Bretts personally liable. This assignment of error lacks merit for three reasons. First, appellants failed to timely raise this issue below. On appeal, this court need not consider any claim of error that a party failed to raise in the trial court. The claimed error, therefore, is waived. Second, the trial court did not determine the personal liability of the Bretts; this court made that determination in the appeal of "Xam I" when it found in favor of Xam on its counterclaim and, therefore, established the law of the case. Third, the law fully supports the "Xam I" appellate court determination that the Bretts with Lakeshore had liability which flowed directly from the two agreements having been breached.
Judgment may jointly be rendered against defendants who go to trial upon a joint answer. First National Bank of Akron v. Cann (1980),503 F. Supp. 419,[3] citing Crane Township v. Secoy (1921),103 Ohio St. 258, 132 N.E. 851. Further,
 * * * whether the contractual duties are joint, several, or joint and several depends upon the proper interpretation of the contract rendered. See 18 Ohio Jur.3d Contracts Section 175 (1980). The relationship between architect Cann and construction manager B.E.C., as well as their mutual interest in the remodeling project, leads the Court to conclude that defendants jointly bound themselves under the contract documents. See id. Section 174.
Cann at 435; Illinois Controls, Inc. v. Langham (1994), 70 Ohio St.3d 512,639 N.E.2d 771 (a party need not plead the law upon which joint and several liability is found for breach of contract.)
In the case at bar, certain procedural facts are undisputed. The complaint was brought by the appellants, collectively, that is, Lakeshore; the Bretts, individually, brought suit against Xam. In turn, Xam counterclaimed against each of the appellants and expressly distinguished between Lakeshore and the Bretts. From these few facts it is apparent that the issue of the Bretts' personal liability to Xam on its counterclaim was an issue before the trial court and then on appeal in "Xam I". The "Xam I" opinion, however, is completely silent on the issue of the Bretts' personal liability, and it does not mention whether anyone objected to or even raised this issue in the trial court. The "Xam I" opinion does, however, thoroughly discuss the parties' transaction, the two agreements and the numerous instances where the Bretts, as distinguished from Lakeshore, failed to perform under the agreements.
The issue of the Bretts' personal liability was a part of the case from the moment Xam filed its counterclaim. And once this court in "Xam I" pronounced judgment against Lakeshore and the Bretts on Xam's counterclaim, the Bretts' personal liability was fixed and any objection in the case at bar waived because no error was assigned to this issue on the previous appeal. Gallagher v. Cleveland Browns Football Company
(1996), 74 Ohio St.3d 427, 659 N.E.2d 1232; State v. Williams (1977),51 Ohio St.2d 112, 364 N.E.2d 1364. For this reason alone, appellants' first assignment of error is rejected.
Appellants' first claimed error is overruled also because the decision in "Xam I" established the law of the case. This doctrine requires that a decision by an appellate court must be subsequently followed by the trial court in that case. Nolan v. Nolan (1984), 11 Ohio St.3d 1, 462 N.E.2d 410;Weir v. Kebe (1985), 29 Ohio App.3d 53, 503 N.E.2d 177.
This court's decision in "Xam I" settled the issue of the Bretts' personal liability, because this court determined that both the Bretts and Lakeshore were liable to Xam. On remand, the trial court could not do anything but proceed in accordance with the law of the case, that is, ascertain the damages owed to Xam by all three of the appellants. Accordingly, appellants' first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 2: THE TRIAL COURT ERRED IN AWARDING ANY DAMAGES FOR BREACH OF CONTRACT IN EXCESS OF THOSE SPECIFIED IN THE LIQUIDATED DAMAGES PROVISION OF THE PARTIES' `PURCHASE AGREEMENT.'
Appellants argue in their second claimed error that the trial court could not award any amount of damages to Xam in excess of the $50,000.00 earnest money deposit referenced in section 25 of the Purchase Agreement. We reject this claim of error because it ignores the holding in "Xam I".
In "Xam I", this court held that "[t]he Management Agreement was part of the Purchase Agreement" and that "Lakeshore breached the Purchase Agreement and Management Agreement and damages flowed directly from that breach." The trial court properly referred to both agreements in order to determine the limits, if any, on the damages recoverable by Xam. Nonetheless, appellants argue that the trial court could not award any other damages to Xam beyond the liquidated damages provision set forth in section 25 of the Purchase Agreement. Even though the two agreements are integrated, the Purchase Agreement sets forth terms and obligations distinct from those contained in the Management Agreement.
The Purchase Agreement specifically references the Management Agreement and it states that, "[p]ending the Closing, Purchaser shall manage the Seller's business in accordance with the Management Agreement . . ." And, under the express terms of the Management Agreement, it is agreed that Lakeshore, as the Manager of the premises, would:
 ". . . keep and maintain the said Business premises and all fixtures, additions and improvements in good repair and condition, reasonable wear and tear excepted, and upon termination of this Agreement, shall deliver to Owner in good and broom-clean condition."
The Purchase Agreement also specifies in section 25(B):
 In the event Purchaser fails or refuses to close this transaction after ten (10) days notice by Seller that all conditions contained in Section 7 hereof have been satisfied, then the original earnest money deposit set forth in Sections 3(A) and 3(B) hereof shall be retained by Seller as liquidated damages and Seller shall have the immediate right to retake possession and control of the Business and the Management Agreement shall become null and void and of no further legal effect.
It is undisputed that the earnest money deposit amount is $50,000.00.
In Samson Sales, Inc. v. Honeywell, Inc. (1984), 12 Ohio St.3d 27,465 N.E.2d 392, the Ohio Supreme Court set forth the factors to be considered in determining the validity of a liquidated damages clause. The Court held that clauses in contracts providing for reasonable liquidated damages are enforceable so long as "reasonable compensation" is "the legitimate objective of such . . . provisions." Samson, supra.Samson citing the case of Jones v. Stevens (1925), 112 Ohio St. 43,146 N.E. 894, sets forth the specific criteria to be used in evaluating the legitimacy of a liquidated damages clause. The court stated:
 Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficulty of proof and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.
In order to determine the legitimacy of a clause which limits the liability of one party, courts must consider the facts surrounding the contract and whether its goal is to reasonably compensate for the actual damages flowing from a breach of the contract. Samson, supra; NationwideMutual Fire Insurance Co. v. Sonitrol (1996), 109 Ohio App.3d 474,672 N.E.2d 687; Cad Cam, Inc. v. Underwood (1987), 36 Ohio App.3d 90,521 N.E.2d 498; Whitmer v. Great Lakes Cary Corp. (June 16, 1994), Cuyahoga App. Nos. 64931 and 64932, unreported, 1994 Ohio App. LEXIS 2598.
In the case at bar, the liquidated damages clause states:
 "In the event Purchaser fails or refuses to close this transaction * * * then the original earnest money deposit * * * shall be retained as liquidated damages * * * and Seller shall * * * retake possession and control of the Business and the Management Agreement shall become null and void and of no further legal effect."
Unlike the typical "limitation of liability" clause, the liquidated damages clause in this case does not possess the usual earmarks of remedial exclusivity. Nationwide Mutual Fire Ins. Co. v. Sonitrol
(1996), 109 Ohio App.3d 474; 672 N.E.2d 687 ("Dealer's liability shall be limited * * * and this liability shall be exclusive."); Hunter v. BPSGuard Services, Inc. (1995), 100 Ohio App.3d 532, 654 N.E.2d 405 ("any liability * * * of the company shall be limited to * * * and this liability shall be complete and exclusive * * *"); Samson, supra (clause stated that "this liability shall be exclusive"); see, Braden v.Honeywell, Inc. (S.D.Ohio 1998), 8 F. Supp. d 724.
In the case at bar, the liquidated damages clause does not state that it sets forth the "exclusive" limit of liability for appellants in relation to either the Purchase or Management Agreements. The clause is directly related to the contingency that appellants would close the transaction. And "Xam I" concluded, among other things, that appellants "never accomplished transfer of the liquor permit," which was a crucial step towards appellants' fulfilling their promise to "close the transaction." As determined in "Xam I", appellants' failure constitutes a breach of the Purchase Agreement. In determining the damages recoverable by Xam for this breach, the trial court on remand read the plain language of the clause and correctly allowed Xam to keep the earnest money deposit, discussed infra.
In the case at bar, appellants argue that once appellee received the earnest money deposit, the trial court could not award any other damages. Appellants' position is that the liquidated damages clause, once triggered, nullifies the Management Agreement and limits appellee's damages, of whatever nature, to the $50,000.000 earnest money amount. Appellants' position leads to an absurd result because a plain reading of section 25 reveals that it does not possess the broad meaning and application appellants ascribe to it. The liquidated damages provision, included in only the Purchase Agreement, is clear and unambiguous. The clause is not subject to myriad interpretations of its meaning.
In construing any written instrument, the primary objective is to ascertain the intent of the parties, and the general rule is that contracts should be construed so as to give effect to the intention of the parties. Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51, 53, 544 N.E.2d 920. Contract terms must be given their ordinary meaning, unless such a reading results in manifest absurdity or where "some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, 374 N.E.2d 146 quoted in Shifrin v. Forest CityEnterprises (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499, 501.
In the case at bar, appellants' position that the clause sets forth the limit of appellee's possible damages, arising out of a breach of either the Purchase or Management Agreements, is belied by the actual and ordinary meaning of the agreements when they are seen as separate but integrated documents.
Beyond section 25 of the Purchase Agreement, section 27 of that same agreement states:
 27. Remedies Not Exclusive. The election of any one or more remedies by Purchaser or Seller shall not constitute a waiver of the right to pursue other available remedies.
The Management Agreement, in part, provides:
 20. All rights and remedies of Owner herein set forth are in addition to any and all rights and remedies allowed by law and in equity and failure to exercise one or all shall not constitute a waiver thereof.
Appellants' position that the Purchase Agreement's liquidated damages clause is appellee's exclusive remedy defies the clear and succinct language of both agreements. In light of paragraphs 20 and 27 above, section 25 of the Purchase agreement cannot be viewed in isolation, and, therefore, it is clear that that section was not intended to be the exclusive remedy available to Xam, especially if appellants breached the Management Agreement, which the "Xam I" decision determined that they did. Given the express language of the documents and the fact that both of them include provisions which do not limit appellee's ability to pursue other remedies in the event of appellant's breach, this court cannot conclude that appellant's broad reading of the Purchase Agreement's liquidated damages clause is consistent with the intention of the parties.
And, certainly, the amount of the earnest money deposit is not reasonably related to the actual damage incurred by appellee. As determined in "Xam I", contrary to the terms of the Management Agreement, ". . . when Xam resumed control of the bar in October 1990, it was in `shambles'" and required "numerous repairs" before it could be reopened to the public. As a matter of law, an award of damages should place the injured party in as good a position as it would have been in the absence of breach. See F. Enterprises, Inc. v. Kentucky Fried ChickenCorp. (1976), 47 Ohio St.2d 154,; Homes by Calkins, Inc. v. Fisher
(1993), 92 Ohio App.3d 262. A party injured by a breach has the right to expect to be put "in as good a position as he would have been in had the contract been performed." Restatement of the Law 2d, Contracts (1981), 102-103, Section 344.
Here, we reject the suggestion appellee could have anticipated that, contrary to the terms of the Management Agreement, appellants would cause damage to the premises and then leave it in such a state of disrepair that the liquidated damages clause could have been reasonably anticipated to cover these other damages which have nothing to do with the Purchase Agreement. Construed in this way, the liquidated damages clause acts as a penalty when applied to the Management Agreement. Because appellee suffered damages[4] which flowed directly from appellants' breach of the Management Agreement, the $50,000.00 liquidated damage amount is disproportionate to the amount of those actual damages. As a matter of law, the liquidated damages clause, when applied to the Management Agreement and appellant's breach thereof, serves as a penalty and is not enforceable. Samson, supra.
In the case at bar, this court does not have the benefit of a transcript from the trial court's hearing on damages. Without a transcript, we are unable to determine the nature of those proceedings, and are confined, therefore, in presuming the validity of those proceedings. City of Columbus v. Hodge (1987), 37 Ohio App.3d 68,523 N.E.2d 515 (absent transcript of proceedings below, appellate court must presume regularity of lower court proceedings) citing Knapp v.Edwards Laboratories (1980), 61 Ohio St.2d 197, 400 N.E.2d 384.
By agreement of the parties, the trial court did limit Xam's recoverable damages for the appellants' breach of the Purchase Agreement to "the $50,000.00 earnest money * * * as liquidated damages." The trial court also made an award of the actual damages directly related to Xam having to conduct and pay for "necessary repairs, cleaning and maintenance to reopen the bar." The trial court did not err in awarding damages in excess of the amount specified in the liquidated damages clause.
Appellants rely upon the case of Domestic Linen Supply and Laundry Co.v. Kenwood Dealer Group, Inc. (1996), 109 Ohio App.3d 312, 672 N.E.2d 184, which is distinguishable from the facts in this case. In Kenwood, unlike the situation here, the court did not deal with two separate, but integrated agreements, with each agreement setting forth distinct obligations. Kenwood is also unlike the case at bar because it did not involve two sets of damages directly related to two different acts of breach.
Appellants also cite the case of Island Creek Corp. v. Anker EnergyCorp. (6th Cir. 1992), 968 F.2d 1215, 1992 WL 159789. Anker is absolutely inapposite to the facts in the case at bar because it involved Kentucky law and the court's finding that the liquidated damages clause in that case was ambiguous. The Anker court could not determine from the face of the provision at issue whether the parties intended it to function as the sole and exclusive remedy upon breach.
In this case, section 25 of the Purchase Agreement is clear. The clause is triggered only upon the occurrence of one contingency, namely, appellants' failure to close the transaction. It would be manifestly unfair and contrary to fundamental rules of contract construction to apply the clause to appellants' breach of the separate Management Agreement. Section 20 of the Management Agreement expressly states that appellee may pursue all other available remedies in equity or in law upon appellants' breach of that agreement. In awarding appellee $37,629.29 as actual damages, the trial court did not err. Appellant's second assignment of error is overruled.
Judgment accordingly.
It is ordered that appellee recover of appellants its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, J., CONCURS; TIMOTHY E. McMONAGLE, J., CONCURS IN JUDGMENT ONLY.
[1] Xam also filed a third-party complaint which alleged that the Bretts had personal liability as guarantors on certain promissory notes related to the transaction. The third-party complaint is not at issue here.
[2] 22810 Lakeshore Corp. V. Xam, Inc. (Oct. 19, 1998), Cuyahoga App. No. 73367, unreported.
[3] Affirmed by 669 F.2d 415.
[4] The trial court awarded $41,264.43, subject to a setoff of $3,635.14, leaving a total amount of damages of $37,629.29 due to Xam.