WEIR, DIR. OF TRANSP., APPELLEE, *v.*
KEBE ET AL., APPELLANTS.

(Nos. 48752 and 48753 — Decided
March 28, 1985.)

*Anthony J. Celebrezze, Jr.,* attorney
general, and *Vincent Korey,* for appel-
lee.

*Marshman, Snyder & Corrigan,
William F. Snyder* and *Glenn Wag-
goner,* for appellants.

JACKSON, P.J. This is an appeal by
defendants-appellants Stanley W. Kebe,
Sr. and Tiedeman Road Tennis and
Industrial Park Company from a judg-
ment of $635,000 awarded by a jury as
compensation for property appropriated
by the plaintiff-appellee state of Ohio.

Appellants owned property in the
city of Brooklyn, Ohio, located in the
path of construction of interstate
highway I-480. This action was tried
originally on December 10 through 14,
1979. The judgment, however, was over-
turned by the trial court in an order
granting a new trial on the grounds that
the verdict was inadequate, not sus-
tained by the weight of the evidence,
and apparently given under the in-
fluence of prejudice. The judgment of
the trial court was affirmed by this court
in *Weir* v. *Kebe* (Apr. 15, 1982),
Cuyahoga App. Nos. 43722 & 43723,
unreported.

Probate court case No. 892769 (App.
No. 48752) was instituted against Stan-
ley W. Kebe, Sr., Paul J. Hribar, and
others as the joint owners of a parcel of
property ultimately appropriated by the
state of Ohio. Probate court case No.
892847 (App. No. 48753) was instituted
against Tiedeman Road Tennis and In-
dustrial Park Company as the owner of
a contiguous parcel of property ulti-

mately appropriated by the state of Ohio. The cases were consolidated for trial and, by stipulation of the parties, it was agreed that the two respective parcels would be appraised and valued as one parcel.[1]

The action was again brought to trial on February 13 through 17, 1984. Appellants owned 35.15 acres of which 16.19 acres were physically taken by the state of Ohio. The jury awarded appellants $414,000 as compensation for the property taken and $221,000 as compensation for damages to the residue of the property not physically taken. The total award was $635,000. The appellants[2] appeal from that judgment and assign four errors for review.

## I

"First Assignment of Error

"The trial court erred in denying appellants' motions to dismiss.

"a. The State of Ohio failed to describe the property to be appropriated as required by law.

"b. The State of Ohio violated the provisions of Ohio Revised Code § 5511.01 in appropriating Appellants' property.

"c. The State of Ohio violated the provisions of Ohio Revised Code § 163.01 et seq. in appropriating Appellants' property."

Appellants filed motions to dismiss on February 3, 1983 and January 12, 1984. Both motions were overruled by the trial court.

## A

In part A of Assignment of Error I, appellants argue that the petition filed by the state of Ohio to appropriate their property was defective. Appellants argue specifically that the petition filed by the state did not describe a triangular one-acre parcel located immediately adjacent to other parcels described in the petition. Thus, appellants contend that the trial court was deprived of jurisdiction to proceed with the appropriation petition.

We do not agree. R.C. 163.05(A) provides that:

"An agency which has met the requirements of section 163.04 of the Revised Code, may commence proceedings in a proper court by filing a petition for appropriation of each parcel or contiguous parcels in a single common ownership, or interest or right therein. The petition of a private agency shall be verified as in a civil action and all petitions shall contain:

"(A) *A description of each parcel of land or interest* or right therein *sought to be appropriated,* such as will permit ready identification of the land involved; * * *" (Emphasis added.)

As expressly stated in the statute, the only description necessary is a description of the property sought to be appropriated. The one-acre parcel that appellants contend was not described in the petition was *not appropriated* by the state of Ohio. This parcel was part of the residue of approximately nineteen acres which was also not described in the petition. Appellants' contention is not well-taken.

## B

In part B of Assignment of Error I, appellants contend that the state of Ohio violated the provisions of R.C. 5511.01, which govern changes or additions to

---

[1] Tiedeman Road Tennis and Industrial Park Company is an Ohio corporation owned entirely by appellants Stanley W. Kebe, Sr. and his wife, Marie T. Kebe. During the year 1983, Paul J. Hribar and Mary Ann Hribar conveyed by quitclaim deed all of their interest in the subject property to Stanley and Marie Kebe.

[2] On July 24, 1984, this court granted appellants' motion to consolidate App. Nos. 48752 and 48753 for purposes of review.

the state highway system. The appellants argue that R.C. 5511.01 prescribes three courses of action which the state must take within the one-hundred-twenty-day period: "* * * the director shall proceed to acquire any land needed by purchase or gift, or by initiating proceedings to appropriate, or, make a finding that acquisition at such time is not in the public interest.* * *" The property was frozen by the state pursuant to R.C. 5511.01 on March 20, 1978. This action occurred as a result of a change of zoning request filed by appellants in June 1977, and again in December 1977. The state, however, failed to take any action during the one-hundred-twenty-day freeze period. In fact, the appropriation petition was not filed by the state until January 31, 1979. The appellants contend that the alleged violation of R.C. 5511.01 deprived the trial court of jurisdiction to proceed with the appropriation action.

Initially, this court takes note of the fact that the statute provides for *inaction* on the part of the state as well as for the three courses of action outlined above:

"Upon notification that the director has found acquisition at that time not to be in the public interest, *or upon the expiration of the one hundred twenty day period or any extension thereof, if no notice has been received from the director, said authority shall proceed in accordance with law.*" (Emphasis added.)

Thus, the zoning commission or other local authority "shall proceed in accordance with law" if at the expiration of the one-hundred-twenty-day period no notice has been received from the state indicating its intentions regarding the property in question. Consequently, we hold that the state did not violate R.C. 5511.01 by failing to act during the one-hundred-twenty-day freeze on appellants' property.[3]

## C

In part C of Assignment of Error I, appellants argue that the state violated R.C. 163.04 governing appropriation of property and R.C. 163.59(C) which designates land acquisition policies of the state. R.C. 163.04 provides that "[a]ppropriations shall be made only after the agency is unable to agree, for any reason, with the owner, or if more than one, any owner * * *." R.C. 163.59 provides that:

"In order to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the many state programs, and to promote public confidence in public land acquisition practices, heads of state agencies shall, to the greatest extent practicable, be guided by the following policies:

"* * *

"(C) Before the initiation of negotiations for real property, the head of the state agency concerned shall establish an amount which he believes to be just compensation therefor and shall make a prompt offer to acquire the property for the full amount so established. In no event shall such amount be less than the agency's approved appraisal of the fair market value of such property. * * *"

The record indicates that the state presented appellants with a fair market valuation offer of $583,791 in September and November 1978. Therefore, the provisions of R.C. 163.04 have been complied with by the state.

Appellants also argue that the state violated R.C. 163.59(C) by offering an

---

[3] No opinion is expressed herein as to whether a violation of R.C. 5511.01 would deprive the trial court of jurisdiction to proceed with the appropriation action.

amount that was less than the amount that the state appraisers determined to be a fair market value of the property. Appellants refer to the language in R.C. 163.59(C) which provides that "[i]n no event shall such [offered] amount be less than the agency's *approved appraisal* of the fair market value of such property." (Emphasis added.)

The record indicates, however, that the state did not *approve* its own appraisals *in toto*. According to the state, the offer of $583,791 was arrived at through the honest and discretionary finding of fair market value which is consistent with R.C. 163.59; the offer was not based upon an approved independent appraisal, nor does there exist a statutory obligation mandating the same.

This court is inclined to agree with the state's contention that its authorized appraisal does not automatically become an *approved appraisal* for purposes of R.C. 163.59(C). The appellants' interpretation of R.C. 163.59(C) would render meaningless the language of this section which provides that "[b]efore the initiation of negotiations for real property, the head of the state agency concerned shall establish an amount *which he believes to be just compensation* therefor and shall make a prompt offer to acquire the property *for the full amount so established*." (Emphasis added.) We are persuaded that the authorized state official possesses the discretion to offer either a higher or lower amount than the appraised value of the property submitted by state appraisers. The "approved appraisal" of R.C. 163.59(C), then, is the amount fixed by the pertinent state official and not the amount submitted by any particular state appraiser.

Moreover, even if the state had violated R.C. 163.59, we are not convinced that such violation could serve as the basis for dismissing the action on jurisdictional grounds. R.C. 163.52(A) provides that "[s]ection 163.59 of the Revised Code creates no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation."

Appellants' contention is not well-taken. Accordingly, Assignment of Error I is overruled.

II

"Second Assignment of Error

"The trial court erred in setting the date of take, and thus date of valuation, as December 10, 1979."

Generally, in an appropriation case, the value of the property being taken is determined as of the time of trial, *Board of Education* v. *Hecht* (1955), 102 Ohio App. 521 [4 O.O.2d 41], paragraph one of the syllabus. "However, the application of that rule of law may result in an award of compensation to the owner of the property appropriated, which is unreasonable and unjust under unusual facts and circumstances * * *." *Cleveland* v. *Carcione* (1963), 118 Ohio App. 525, 532 [26 O.O.2d 53]. Actual interference with the property rights of the owner may justify setting the date of take prior to the day of trial. *In re Appropriation for Hwy. Purposes* (1967), 12 Ohio App. 2d 169 [41 O.O.2d 257]. Cf. *Smith* v. *Erie Rd. Co.* (1938), 134 Ohio St. 135 [11 O.O. 571]. In the case at bar the date of take was established as of the date of the first trial, December 10, 1979.

Appellants contend that the date of take should have been established in March 1978 because that date corresponds with the actual interference by the state of Ohio with their property rights. Appellants point to the following occurrences which allegedly disturbed their enjoyment of their property rights:

(1) the state notified appellants' tenants, pursuant to R.C. 163.53 and 163.56, that relocation benefits were available due to the contemplated appropriation of appellants' property; (2)

the city of Brooklyn failed to take any action on appellants' rezoning requests both before and after the one-hundred-twenty-day freeze on the property; (3) the state froze appellants' property for one hundred twenty days pursuant to R.C. 5511.01; (4) the city of Brooklyn prohibited appellants from ·drilling for oil on well sites located on the property; and (5) the value of appellants' property depreciated substantially after March 1978, through no fault of appellants.

After a review of the alleged acts of interference by the state, we are not convinced that any of the acts referred to by appellants would constitute such interference as would justify changing the date of take which was set by the trial court, *i.e.*, December 10, 1979.

Notification to appellants' tenants that relocation benefits were available or the one-hundred-twenty-day freeze on the property cannot serve as the basis for changing the date of take because "the mere expression or conveyance of an intent to take private property in the future * * * is not such a substantial interference with private property as to constitute a 'taking.' " *J. P. Sand & Gravel Co.* v. *State* (1976), 51 Ohio App. 2d 83, 89 [5 O.O.3d 239]. Nor is the situation here similar to that in *In re Appropriation for Hwy. Purposes, supra,* where the property owners were *required*, pursuant to statute, *to vacate* their property within sixty days after notification of the filing of a resolution and finding that appropriation was necessary. Appellants also blame the state for certain actions taken by the city of Brooklyn. If the city of Brooklyn prohibits oil drilling or refuses to rezone certain property, such "interference" is not conduct which can be attributed to the state of Ohio. Finally, we note that "[w]here a property owner claims that his property in fact has been taken by the state and that he has been damaged and appropriation proceedings have not been instituted, the property owner may

proceed to seek a writ of mandamus to compel the initiation by the state of such appropriation proceedings." *J. P. Sand & Gravel Co.* v. *State, supra,* at 89. See *Wilson* v. *Cincinnati* (1961), 172 Ohio St. 303 [16 O.O.2d 71]. Where, as here, the state of Ohio took no active steps which resulted in the depreciation of appellants' property, see *Cleveland* v. *Carcione, supra,* the trial court did not err in setting the date of take as of the day of the first trial. Appellants' second assignment of error is overruled.

### III

"Third Assignment of Error

"The trial court erred in preventing appellants from offering any testimony at trial concerning the value of their land including the oil wells which were located on appellants' property."

At the first trial of this matter, the trial court excluded evidence of potential oil production on appellants' land. Appellants thereafter cross-appealed this ruling and this court affirmed the judgment of the trial court:

· "Although a jury in determining the value of property at its highest and best use may consider uses other than those which are permissible under existing zoning, *Masheter* v. *Kebe* (1976), 49 Ohio St. 2d 148 [3 O.O. 3d 86], the trial court does not err in removing from the jury's consideration uses which the record clearly demonstrates are neither legal nor reasonably and practically suitable for the property. Accordingly, the second part of appellees' third assignment of error is overruled." *Weir* v. *Kebe* (Apr. 15, 1982), Cuyahoga App. Nos. 43722 & 43723, unreported, at 8-9.

Prior to the second trial, the trial court granted appellee's motion *in limine* which prevented appellants from offering any evidence as to the oil production value of the property. Appellants argue that the trial court erred in excluding this evidence.

The doctrine of the "law of the

case," however, is applicable here[4] and we are bound to adhere to this court's prior determination of this issue. The doctrine provides that a decision of a reviewing court in a case remains the law of the case as to all relevant legal questions in all subsequent proceedings at both the trial and appellate levels. *Nolan* v. *Nolan* (1984), 11 Ohio St. 3d 1. Accordingly, appellants' third assignment of error is overruled.

## IV

"Fourth Assignment of Error

"The trial court erred in permitting state witnesses Constance Baus and Agnes Welch to testify."

In their fourth assignment of error, appellants argue that the trial court should have excluded the testimony of two state witnesses due to the fact that their names were not included on the pretrial witness list.

The trial court clearly possessed the discretion to exclude this testimony if appellee intentionally failed to include the witnesses in a pretrial witness list. See *Paugh & Farmer, Inc.* v. *Menorah Home for Jewish Aged* (1984), 15 Ohio St. 3d 44. The record indicates, however, that the failure to name the witnesses until a week prior to trial was not the result of "willful noncompliance" with a prior court order. See *Nickey* v. *Brown* (1982), 7 Ohio App. 3d 32; *Cucciolillo* v. *East Ohio Gas Co.* (1980), 4 Ohio App. 3d 36. Moreover, the depositions of the witnesses were taken prior to trial, and because of the nature of their testimony, appellants can hardly claim that they were surprised by this evidence. Appellants' fourth assignment of error is overruled.

---

[4] Although the doctrine is a rule of practice and will not be applied so as to achieve unjust results, appellants offer no good reason why we should disregard the prior mandate of this court.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

ANN MCMANAMON and COX, JJ., concur.

COX, J., of the Seventh Appellate District, sitting by assignment in the Eighth Appellate District.