OPINION
{¶ 1} Defendants-appellants, GBR Industrial Park Limited Liability Company and Lauren Stella Baker Richman, appeal from a Belmont County Common Pleas Court appropriation judgment finding appellants' property to be valued at $780,000.
 {¶ 2} This is an appropriation action brought by plaintiff-appellee, the Bridgeport Exempted Village School District Board of Education, involving a large tract of land in Bridgeport owned by appellants. Appellee plans to build a new school on the property. Currently a Big Bear store is located on the property. However, the store is vacant.
 {¶ 3} Appellants have never contested appellee's right to appropriate the land and the sole issue in the case is the value of the land. As required by statute, appellee hired an appraiser to appraise the land's value. Charles Snyder, a certified appraiser, valued the land at $1,274,000. Appellee offered this amount to appellants, but appellants rejected the offer.
 {¶ 4} The case proceeded to a jury trial on the issue of valuation. Two experts testified on appellee's behalf and one expert testified on appellants' behalf. The jury valued the property at $780,000.
 {¶ 5} The trial court entered judgment on the jury's verdict on June 28, 2004. In its judgment entry, the court instructed that appellee may deposit the $780,000 with the clerk of courts, after which time, appellee could take possession and ownership of the property. The court further stated that it would thereafter issue a final judgment granting appellee full ownership of the property.
 {¶ 6} Appellants filed a notice of appeal from the June 28 judgment entry on July 23, 2004. Appellee subsequently filed a motion to dismiss the appeal alleging that the June 28 judgment was not final. On August 23, 2004, the trial court entered a judgment confirming appellee's payment and ordering the transfer of ownership. Appellants did not file a notice of appeal from this judgment. In a January 13, 2005 journal entry, this court overruled appellee's motion to dismiss and determined that the June 28 judgment was a reviewable order. We also noted, in the alternative, that we could review this case by treating the notice of appeal as being prematurely filed.
 {¶ 7} Appellants raise three assignments of error, the first of which states:
 {¶ 8} "The verdict of the jury was contrary to the evidence in this case."
 {¶ 9} Appellants argue that the jury's verdict was against the weight of the evidence. In support, they point to the three experts' opinions on the property's value. First, they note that Snyder changed his opinion from what he originally appraised the property at. As noted previously, Snyder appraised the property at $1,274,000, which appellee offered and appellants rejected. At trial, Snyder increased his appraisal value to $1,381,000. Second, appellants point out that John Goodman first opined at trial that the property was worth $850,000. However, after further questioning, Goodman lowered this value to between $600,000 and $700,000. Third, appellants note that their expert, Debi Wilcox, valued the property at $2,300,000. Furthermore, appellants point out that Snyder and Wilcox are both certified and licensed appraisers while Goodman is not. Thus, they conclude that the jury should have given more weight to Snyder's and Wilcox's opinions than to Goodman's opinion. They claim that because the jury's verdict was below the original values placed on the property by all three experts, the verdict was against the weight of the evidence. Citing, Wray v. Allied Indus. Development Corp., 7th Dist. No. 01-CA-188, 2002-Ohio-5214; Burke v. Athens (1997), 123 Ohio App.3d 98,101, 703 N.E.2d 804.
 {¶ 10} In reviewing the trial court's decision, this court is guided by the principle that a judgment supported by some competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence. C.E.Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280,376 N.E.2d 578. Furthermore, in considering whether the judgment is against the manifest weight of the evidence, it is important that this court be guided by a presumption that the findings of the trier of fact are correct. Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77,80, 461 N.E.2d 1273. A reviewing court should give every reasonable presumption in favor of the trial court's judgment and findings of fact.Karches v. City of Cincinnati (1988), 38 Ohio St.3d 12, 19,526 N.E.2d 1350.
 {¶ 11} The witnesses testified as follows.
 {¶ 12} Snyder testified first. He is a certified appraiser. (Tr. 49-50). He first valued the property at $1,274,000 on August 7, 2003. (Tr. 59-60). At trial, he increased his appraisal value to $1,381,000 based on an improved economy from August 2003 until May 2004. (Tr. 61).
 {¶ 13} Next, Goodman testified. He is a real estate broker, builder, and developer. (Tr. 82). Goodman is not a certified appraiser, though he has spent his whole life in the real estate business. (Tr. 85, 88). He originally came up with a valuation of between $700,000 and $1,000,000 for the property in December 2002. (Tr. 101-102). When asked if he could give an opinion as to the fair market price, Goodman opined that it would be $850,000. (Tr. 101). However, Goodman stated that his opinion had changed since December 2002. (Tr. 102). He based the change in his opinion on a similar building in a better location leasing the property for less money. (Tr. 102-103). Goodman stated that his new opinion was that the fair market value would be between $600,000 and $700,000. (Tr. 103-104).
 {¶ 14} Finally, Wilcox testified. She is a certified appraiser. (Tr. 120). She opined that the property's fair market value was $2,300,000. (Tr. 136).
 {¶ 15} In an appropriation case, the jury's verdict must be within the range supportable by proof. Wray, 7th Dist. No. 01-CA-188, at ¶ 9. Here, three witnesses testified as to the value of the property. Their combined range was from $600,000 to $2,300,000. Thus, the jury's verdict of $780,000, while at the low end, was within the range given by the three experts. And while Wilcox and Snyder are certified appraisers and Goodman is not, Goodman had experience and other qualifications for the jury to consider in weighing his testimony. Since the jury's verdict was within the range of the fair market values presented by the witnesses, we will not disturb the verdict as being against the weight of the evidence. Accordingly, appellants' first assignment of error is without merit.
 {¶ 16} Appellants' second assignment of error states:
 {¶ 17} "The award is the product of parochial prejudice which was aroused by the school district."
 {¶ 18} Here appellants assert that appellee prejudiced the jury against them by making repeated references that appellants were from New York and using an out-of-town expert and emphasizing the fact that appellee used an expert who was from Belmont County.
 {¶ 19} Appellants failed to object to any of the out-of-town references that they now take issue with. Therefore, we will review this assignment of error for plain error.
 {¶ 20} The plain error doctrine allows us to correct errors clearly apparent on their face and prejudicial to the complaining party even though the complaining party failed to object to the error in the trial court. In re Atkins (Mar. 7, 2001), 7th Dist. Nos. 705, 706, citingReichert v. Ingersoll (1985), 18 Ohio St.3d 220, 223, 480 N.E.2d 802. But the application of the plain-error doctrine in civil cases is limited to "extremely rare cases involving exceptional circumstances that seriously affect the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Id., citing Goldfuss v. Davidson (1997),79 Ohio St.3d 116, 679 N.E.2d 1099, at syllabus.
 {¶ 21} Appellee did, as appellants allege, make repeated references that appellants and their expert were from out-of-town. It also emphasized the fact that Goodman was from Belmont County. However, these references are not cause to reverse the jury's verdict.
 {¶ 22} For example, one comment appellants take issue with occurred during voir dire. Appellee's counsel asked the prospective jurors whether they knew anyone involved with the case. In so doing, he made the following comment:
 {¶ 23} "A Charles Snyder, he's an appraiser from New Philadelphia. Never even heard of him? Okay. A Lawrence Rosedale, one of the representatives of the defendants, he's from New York. Have you ever heard of him? Debi Wilcox, an appraiser by the property owners from Columbus. Have you even heard of her? And Daniel Wechsler from New York, you've not heard of him, either, I assume?" (Tr. 11).
 {¶ 24} It is standard practice for attorneys, during voir dire, to ask the potential jurors whether they know any of the attorneys or witnesses involved with the case. This is to ensure that the jurors will not be more or less inclined to take one side over the other or to give one witness' testimony more credence due to a juror's outside impression of the witness. Here appellee's counsel asked the jurors about the witnesses and counsel to ensure that they were unfamiliar with them. By telling the jurors where the attorneys and witnesses were from, appellee's counsel gave them a reference point of who these people were. It was not unreasonable for counsel to have asked these questions during voir dire as appellants suggest.
 {¶ 25} Appellants also take issue with comments appellee's counsel made during opening statements. Specifically, they point to the following excerpts:
 {¶ 26} "It's owned — the property is actually owned by two defendants. It's owned by a New York company known as GBR, and by an individual known as Lauren Stella Baker Richmond, also of New York.
 {¶ 27} "* * *
 {¶ 28} "You're basically going to hear three experts and receive three exhibits, being the report from each expert. One of the experts is Charles Snyder. He's probably going to be the first witness today. He's a gentleman from New Philadelphia. He evaluated the property at $1,274,000. And he'll explain to you how he came up with that figure and he'll provide you with his complete report. We got it right here and we'll provide you with that complete report.
 {¶ 29} "Based upon a recent decision that the valuation will be as of today, Mr. Snyder has updated that figure to the sum of $1,381,000, based upon improved economy. Perhaps not in Belmont County but, perhaps, generally in the country. * * *
 {¶ 30} "You're going to hear some testimony from another witness from the defendants, a Debi Wilcox, excuse me, a Debi Wilcox, yes, from Columbus, Ohio. She came up with a figure of $2,260,000. That's the defendant's one expert that they'll be using to come up with a figure. She's from Columbus Ohio.
 {¶ 31} "The final witness or, excuse me, the final of the three I'm discussing at this point, is Mr. John Goodman. John Goodman from St. Clairsville who has done real estate, the evidence will show, all his life in Belmont County, Ohio. He'll testify to the business he runs, he'll testify what he's done in this county in terms of restructuring deals and rebuilding vacant grocery stores. The evidence will show that John Goodman is the individual who has the thumb, on the pulse of the values in Belmont County, Ohio. Not someone from Columbus, not someone from New Philly even, and certainly not someone from New York.
 {¶ 32} "The evidence will show there's a different world out there and we're dealing in Belmont County, Ohio; and the evidence will show that Mr. John Goodman is the one who knows values of your property, my property and this property in Belmont County, Ohio.
 {¶ 33} "* * *
 {¶ 34} "And by that I mean, they tried to get a subtenant, someone who would take over their position or rerent [sic.] from them while they paid the New York rent.
 {¶ 35} "* * *
 {¶ 36} "What we're going to ask you to do is take all of this into consideration, all of it, and come back with a figure for Bridgeport School District to pay the two defendants in New York on this matter." (Tr. 42-46).
 {¶ 37} In these comments, it appears appellee's counsel was attempting to do two things. First, he was informing the jury about the three experts and their differing values on the property. And second, he was trying to persuade the jury that Goodman, the Belmont County expert, would give the best and most reliable value. In order to build up his expert, appellee's counsel made it a point to emphasize that Goodman was most familiar with Belmont County and Belmont County real estate.
 {¶ 38} The purpose of an opening statement is to familiarize the jury with the general nature of the case and to outline the facts which counsel expects the evidence to show. Maggio v. Cleveland (1949),151 Ohio St. 136, 140, 84 N.E.2d 912. However, counsel should be accorded latitude by the trial court in making his opening statement. Id.
 {¶ 39} Appellee's counsel was not out of line in telling the jury where the experts were from. Evidence as to where they were from and how familiar they were with Belmont County and its property values was adduced during each witnesses' testimony. Given the latitude granted to counsel during opening statements and the fact that appellee's counsel was setting out facts which the evidence later demonstrated, we cannot now conclude that appellee's counsel's statements were inappropriate.
 {¶ 40} Next, appellants take issue with several questions appellee asked the experts. First, during direct examination of Goodman, the following exchanges took place:
 {¶ 41} "A. [Goodman] Big Bear leased the property. They had hopes and they no longer had a use of the building. They were still paying the rent on a monthly basis.
 {¶ 42} "Q. [appellee's counsel] To New York?
 {¶ 43} "* * *
 {¶ 44} "A. And they were currently paying approximately 73 cents per square foot.
 {¶ 45} "Q. Okay, let's stop right there. Big Bear was paying the owners in New York 73 cents a square foot?" (Tr. 90, 92).
 {¶ 46} Second, a representative for appellants testified, Daniel Wechsler. During his testimony, appellee's counsel, in leading into a question, stated: "Okay. Forget GBR, if we're worried about interlinking companies in New York, okay?" (Tr. 163). And then the following exchange occurred:
 {¶ 47} "A. [Wechsler] Yes, if you're talking a typical business deal —
 {¶ 48} "Q. But New York is not a typical business deals [sic.]?" (Tr. 164).
 {¶ 49} In these questions, it seems appellee's counsel, while making repeated references to New York, was trying to keep the facts straight. Furthermore, the fact remains that appellants are from New York. Appellee should not be penalized for simply repeating where appellants are from.
 {¶ 50} Finally, appellants take issue with remarks appellee's counsel made in closing arguments. During closing arguments, counsel noted that Wilcox was from Columbus and was not particularly familiar with Belmont County. (Tr. 188). He also remarked that Snyder was from New Philadelphia and that, perhaps, he was a little more familiar with Belmont County. (Tr. 190). And then counsel commented, in talking about Goodman, "You're from Belmont County, so am I." (Tr. 191).
 {¶ 51} As is the case with opening statements, counsel should be afforded great latitude in closing arguments. Pesek v. Univ. NeurologistsAssn., Inc. (2000), 87 Ohio St.3d 495, 501, 721 N.E.2d 1011. Only where "`gross and abusive conduct occurs,'" is the trial court bound to sua sponte correct the prejudicial effect of counsel's misconduct. Id., quoting Snyder v. Stanford (1968), 15 Ohio St.2d 31, 37, 238 N.E.2d 563.
 {¶ 52} Counsel's statements about New York and Belmont County during closing arguments did not constitute "gross and abusive conduct." Counsel only referred to evidence that had been presented. He was trying to convince the jury that Goodman's value was the most accurate since, because he was from Belmont County, he was in the best position to give a realistic value of the property.
 {¶ 53} These alleged prejudicial statements and questions by appellee's counsel did not result in a jury award based on prejudice. The jury's verdict, as discussed in appellants' first assignment of error, was within the range of values given by the experts. Thus, the trial court did not commit plain error by failing to sua sponte admonish appellee's counsel for his references to where appellants and the experts were from. Accordingly, appellants' second assignment of error is without merit.
 {¶ 54} Appellants' third assignment of error states:
 {¶ 55} "The school district was required to make a revised offer when its appraiser increased his valuation."
 {¶ 56} According to R.C. 163.59(C), when dealing with public land acquisition, the purchasing party shall have the land appraised. The head of the acquiring agency shall then establish an amount that it believes to be just compensation for the property and shall make a prompt offer to acquire the property for no less than the full amount so established. R.C. 163.59(D). In this case, appellee had Snyder appraise the property. He appraised it at $1,274,000. Appellee offered this amount to appellants, but they rejected the offer thus sending the case to trial. Just before the trial began, Snyder informed appellee that he was modifying his appraisal to $1,381,000 because the economy had improved since he issued his report nine months prior.
 {¶ 57} Appellants contend that appellee was required to make a new written offer to them in the amount of Snyder's new appraisal value. They rely on R.C. 163.59(E), which provides:
 {¶ 58} "If information presented by the owner or a material change in the character or condition of the real property indicates the need for new appraisal information, or if a period of more than two years has elapsed since the time of the appraisal of the property, the head of the acquiring agency concerned shall have the appraisal updated or obtain a new appraisal. If updated appraisal information or a new appraisal indicates that a change in the acquisition offer is warranted, the head of the acquiring agency shall promptly reestablish the amount of the just compensation for the property and offer that amount to the owner in writing."
 {¶ 59} Since appellees did not make a new offer based on Snyder's modified appraisal value, appellants contend that we must require appellee to make them a new offer in that amount.
 {¶ 60} In Weir v. Kebe (1985), 29 Ohio App.3d 53, 503 N.E.2d 177, the property owner in an appropriation case appealed and argued, among other things, that the State violated R.C. 163.59(C) by offering an amount that was less than the amount that the State appraisers determined to be a fair market value of the property. At the time, R.C. 163.59(C) provided, "[i]n no event shall such [offered] amount be less than the agency's approved appraisal of the fair market value of such property."[1]
 {¶ 61} The court found that the State never approved the full amount of its appraisers' value. Id. at 56. The court further noted that the State's offer was not based upon an approved independent appraisal, nor did a statutory obligation exist mandating the same. Id. It concluded, "[w]e are persuaded that the authorized state official possesses the discretion to offer either a higher or lower amount than the appraised value of the property submitted by state appraisers." Id. Finally, the court observed that had a violation of R.C. 163.59 occurred, it would not serve as a basis for dismissing the action on jurisdictional grounds because of R.C. 163.52(A), which provides that, "[t]he failure of an acquiring agency to satisfy a requirement of section 163.59 of the Revised Code does not affect the validity of any property acquisition by purchase or condemnation." Id.
 {¶ 62} Weir lends us guidance in this case. Appellee was not required to offer appellants the exact value of Snyder's appraisal as appellants suggest. Appellee was required to obtain an appraisal, which it did. See R.C. 163.59(C). It was then required to establish an amount it believed to be just compensation for the property and offer that amount to appellants, which it did. See R.C. 163.59(D). That amount could not be less than appellee's approved appraisal of the fair market value of the property. Id. Appellee was next required to submit a written offer to appellants. Id. Appellants then had the opportunity to consider the offer, to present material that they believed was relevant to determining the fair market value of the property, and to suggest modification in the proposed terms and conditions of the acquisition. Id.
 {¶ 63} If appellants presented information, or if a material change in the character of the property indicated a need for new appraisal information, or if more than two years elapsed since the time of the appraisal, then appellee should have had the appraisal updated. See R.C.163.59(E). None of these contingencies occurred. If they had, and appellee then sought an updated appraisal and that appraisal indicated that a change in the offer was warranted, then appellee would have had to have reestablished the amount of the just compensation for the property and offered that amount to appellants in writing. Id. However, since none of the contingencies set out in part one of R.C. 163.59(E) occurred, appellee was not required to make a new written offer in compliance with part two of R.C. 163.59(E).
 {¶ 64} Furthermore, according to Weir, the offer amount does not necessarily have to match the appraisal amount. Appellee had to approve the full amount of the appraisal in order to be statutorily required to offer appellants that amount. And while appellee approved Snyder's original appraisal, there is no indication that it ever approved Snyder's revised appraisal. In fact, it seems that they did not approve of the revised proposal because at trial they called Goodman to testify. And Goodman's valuation of the property was significantly less than Snyder's appraisal.
 {¶ 65} Finally, upon learning of Snyder's increased appraisal, appellants could have requested appellee to offer them that amount. Appellants raised no objection to Snyder's new appraisal at trial even though they were made aware during opening arguments that Snyder was raising his appraisal by a dollar a square foot. (Tr. 43-44). Instead of objecting or asking appellee to make them an offer in Snyder's new appraisal amount, appellants proceeded with the trial. Had appellee offered appellants Snyder's revised value of $1,381,000, it seems likely appellants would have refused it. Snyder only increased his appraisal by $107,000. While this may seem like a large sum, when we consider that appellants' expert opined that the property was worth $2,300,000 it is highly unlikely that an increase of $107,000 would have made much of a difference when appellants were seeking approximately a million dollars more.
 {¶ 66} Given the above, appellee did not err in failing to make a new offer to appellants in the amount of Snyder's day-of-trial increased value. Thus, appellants' third assignment of error is without merit.
 {¶ 67} For the reasons stated above, the trial court's judgment is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs.
[1] R.C. 163.59 was amended on September 6, 2002 and the language of the old section (C) is now included in the new section (D).