**CITY OF WADSWORTH, Appellant,**

**v.**

**YANNERILLA et al., Appellees.**

[Cite as *Wadsworth v. Yannerilla,* 170 Ohio App.3d 264, 2006-Ohio-6477.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

No. 06CA0019.

Decided Dec. 11, 2006.

Dennis M. O'Toole and Daniel D. Mason, for appellant.

Martin Frantz, Wayne County Prosecuting Attorney, Jason B. Desiderio, Assistant Prosecuting Attorney, J. Gregory Smith, and Robert J. Karl, for appellees.

WHITMORE, Presiding Judge.

{¶ 1} Appellant, the city of Wadsworth, has appealed from the judgment of the Wayne County Court of Common Pleas, which dismissed its petitions for appropriations. This court reverses the judgment.

## I

{¶ 2} In February 2002, plaintiff-appellant, the city of Wadsworth, entered into an agreement with the city of Barberton, wherein Wadsworth obtained a perpetual easement for approximately 17 acres of land owned by Barberton in Chippewa Township in Wayne County (the "Chippewa Creek property"). Wadsworth's purpose for obtaining the easement was to construct, maintain, and operate drinking-water production wells on the Chippewa Creek property. The agreement also allows Wadsworth to withdraw up to three million gallons of water per day, barring emergency. Wadsworth requires easements over the properties of the defendants-appellees (collectively, the "landowners") to transport water the six and one-half miles from the Chippewa Creek property to Wadsworth.

{¶ 3} On November 8, 2004, Wadsworth filed petitions to appropriate permanent water-transmission-line easements across the properties of defendants-appellees Edward and Loretta Kunkel and Samuel Yannerilla. On November 24, 2004, Wadsworth filed a similar petition with regard to the property of defendants-appellees Russell and Christina Dietry. On December 7, 2004, Wadsworth filed a similar petition with regard to property owned by defendant-appellee KDD Miller Farm Partnership ("KDD"). Each of the petitions against the landowners was based on the determination by Wadsworth that the transmission-line easements were necessary to transport and provide water service to the citizens of Wadsworth.

{¶ 4} The cases were consolidated and a necessity hearing was held on May 4 and 10, 2005. After trial, the court issued an order that requested that the landowners prepare written findings of fact and conclusions of law. On February 24, 2006, the trial court adopted the landowners' proposed findings of fact and conclusions of law verbatim.

{¶ 5} Wadsworth has timely appealed, asserting one assignment of error.

## II

### Assignment of Error

The trial court erred when it dismissed the city of Wadsworth's petitions for appropriation.

{¶ 6} In its sole assignment of error, Wadsworth argues that the trial court improperly dismissed its petitions for appropriation with regard to the landowners' properties. Specifically, Wadsworth argues that its necessity determination was proper, that it had negotiated with the landowners in good faith, and that the trial court erred when it concluded to the contrary. We agree.

{¶ 7} "The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation." *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, at ¶ 11. See, also, the Fifth and Fourteenth Amendments to the United States Constitution; Section 19, Article I, Ohio Constitution. The constitutional inquiry in an eminent-domain case is twofold and requires a court to determine "whether both the compensation requirement and the public-use tests were satisfied." *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, at ¶ 42.

{¶ 8} The exercise of the eminent-domain power is discretionary and, accordingly, "[t]he decision of a legislative body to appropriate a particular piece of property is afforded great deference by courts." *Pepper Pike v. Hirschauer* (Feb. 1, 1990), 8th Dist. Nos. 56963, 56964, 56965, and 57667, 1990 WL 6976, at *2. R.C. 163.09(B) allows for judicial review of a decision to appropriate property to determine "(1) 'whether the legislature's determination that the appropriation is necessary was an abuse of discretion'; (2) 'whether the legislature's allegation in its petition that the parties could not agree is true'; and (3) 'whether the legislature * * * has the right to appropriate the property.' " *Akron v. Tractor Place, Inc.*, 9th Dist. No. 21379, 2003-Ohio-4531, 2003 WL 22015533, at ¶ 10, quoting *Huron v. Hanson* (July 28, 2000), 6th Dist. No. E–99–060, 2000 WL 1033034.

{¶ 9} R.C. 163.09(B) provides that the necessity determination of the appropriating agency "shall be prima facie evidence of that necessity," barring proof showing that the agency abused its discretion in making the determination. See *Tractor Place* at ¶ 11. R.C. 163.09(B) places the onus on the property owner to prove that the appropriating agency abused its discretion in making its necessity determination. Id. See, also, *Hirschauer*, at *2 (stating that "the property owner bears the burden of proving that neither the right nor the necessity exists"). Accordingly, a determination that an appropriation is necessary for a public use will not be disturbed unless the property owner proves that the determination was the result of fraud, bad faith, or an abuse of discretion. *Tractor Place* at ¶ 11. Wadsworth abused its discretion if it acted unreasonably, arbitrarily, or unconscionably in making its necessity determination. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 10} The trial court determined that Wadsworth had abused its discretion based on two principal conclusions of law. First, that the water-transmission-line easements were not necessary because Wadsworth had not obtained approval for its well site from the Ohio Environmental Protection Agency ("OEPA") and, second, that Wadsworth had failed to negotiate in good faith with the landowners. We will address each conclusion separately for greater clarity.

## Necessary for a Public Purpose

█ {¶ 11} In its February 24, 2006 ruling, the trial court essentially concluded that the water-transmission-line easements were not necessary for a public use because they were not immediately necessary. Therefore, the trial court reasoned, Wadsworth had abused its discretion in determining that they were. This conclusion misapplies the constitutional calculus and is incorrect as a matter of law.

█ {¶ 12} The Constitution does not require that the taking be immediately necessary, only that the taking is necessary for a public purpose. It is clear to this court that providing a new source of drinking water for Wadsworth's residents is well within the meaning of "public use" as detailed in the Constitution. Further, the water-transmission lines are necessary to achieve the public purpose of delivering the water to the citizens of Wadsworth. Accordingly, in the most basic sense, the taking of the easements is necessary for a public purpose.

{¶ 13} The trial court's ruling that a public necessity did not exist because Wadsworth had not obtained OEPA approval for the proposed Chippewa Creek well is in error because as stated above, the landowners bore the burden of proving that this necessity did not exist. The landowners did not provide, nor has this court found, any legal authority that requires an appropriating agency to have full approval for its projects prior to taking action to appropriate property. To the contrary, the authorities appear to allow an agency to begin appropriating property in anticipation of completing a defined public purpose.

{¶ 14} R.C. 163.59(B) requires that the appropriation be for a "defined public purpose that *is to be achieved* in a defined and reasonable period of time." (Emphasis added). To this court, it appears that the Revised Code contemplates reasonably prospective projects. In fact, a "public agency may 'provide for not only its present but also its prospective necessities' 'if it is not more than may in good faith be presumed necessary for future use within a reasonable time.'" *Columbus City School Dist. Bd. of Edn. v. Holding Corp. of Ohio* (1971), 29 Ohio App.2d 114, 124, 58 O.O.2d 165, 278 N.E.2d 693, quoting 29A Corpus Juris Secundum 386, Section 92.

{¶ 15} Further, OEPA regulations require that Wadsworth demonstrate control of the property, via deeds or easements, for the Chippewa Creek well field and any water-transmission lines. Ohio Adm.Code 3745–91–06(D)(2) requires that for a new well, Wadsworth was required by the OEPA to submit "[a] copy of a deed, easement, or other legal instrument showing that the owner has control of lands" for the well site. Further, Charles Scott Williams of the OEPA and a witness for the landowners testified that an applicant must show ownership and control of parcels for both the well site and any water-transmission lines

extending from that well site prior to receiving final approval. Williams also testified that Wadsworth was not required to seek approval by the OEPA before acquiring property necessary to fulfill the public purpose. Finally, Williams testified that he was unaware of any OEPA regulations that prohibited Wadsworth from acquiring necessary land prior to final plan approval.

{¶ 16} On redirect examination, Williams further testified that Ohio Adm.Code 3745–91–05 required Wadsworth to fill out a data sheet, including "identification of the ultimate owner," and that "[a]n identification of the ultimate owner is what [the OEPA] use[s] to require proof of ownership of the transmission lines or distribution lines." This statement clearly indicates that the OEPA, according to Williams, uses Ohio Adm.Code 3745–91–05 as statutory authority to require applicants to demonstrate ownership and control of property for both the proposed well site and any associated water-transmission lines.

{¶ 17} This court concludes that Wadsworth was well within its constitutional authority to begin taking steps to appropriate land that it deemed necessary to achieve its public purpose prior to obtaining OEPA approval for the well site. To conclude otherwise would result in the unnecessary handcuffing and stalling of an appropriating agency's exercise of its constitutional power. Accordingly, the trial court's decision was incorrect as a matter of law.

**Good Faith Negotiations**

{¶ 18} R.C. 163.04 mandates that an appropriation may be made only after the agency is unable to agree with the owner, or if more than one, any owner, of the property in question. Further, R.C. 163.59(A) requires an appropriating agency to "make every reasonable effort to acquire expeditiously real property by negotiation." The purpose of good faith negotiation is to

encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the many state and federally assisted programs, and to promote public confidence in public land acquisition practices.

R.C. 163.59. The trial court found that Wadsworth had failed to negotiate in good faith with the landowners by failing to consider the landowners' request for a guarantee that their private wells would not be affected by operation of the Chippewa Creek well. Additionally, the trial court found that Wadsworth had failed to negotiate in good faith in that it did not consider the concerns promulgated by KDD regarding the effect that the water-transmission-line easement would have on its farming operation. We disagree.

{¶ 19} R.C. 163.59(D) requires that an appropriating agency establish an amount it considers just compensation for the property and that that amount be no less than the approved and appraised fair-market value. Therefore, if an

agency presents a landowner with a fair-market valuation, it has complied with R.C. 163.59. Further, and more important, the requirement of R.C. 163.04 is satisfied by an appropriating agency's offer of a fair-market valuation for the property. *Weir v. Kebe* (1985), 29 Ohio App.3d 53, 55, 29 OBR 62, 503 N.E.2d 177. The trial court held that "Wadsworth was required to attempt to reach agreement with the landowners prior to making appropriations pursuant to R.C. 163.04." *Weir* states that an offer of fair-market value constitutes a valid attempt to reach agreement with the landowners. The record indicates that Wadsworth made such an offer and therefore negotiated in good faith.

{¶ 20} Wadsworth was not required to provide the landowners with any guarantees, nor was it required to respond to KDD's concerns. Wadsworth was required to tender an offer of fair-market value, to give the landowners reasonable time to contemplate the offer, and to consider the landowners' presentations and suggestions. R.C. 163.59(D). The record indicates that Wadsworth complied with the requirements of R.C. 163.59(D).

{¶ 21} Specifically, with regard to KDD, the record demonstrates that (1) KDD's own appraiser advised KDD to accept Wadsworth's offer, (2) KDD requested $150,000 for the easement when Wadsworth had determined the fair-market value to be $11,800, and (3) negotiations with KDD had been ongoing for over one year. Additionally, Mr. Yannerilla testified that he acknowledged that Wadsworth had attempted to resolve the matter through negotiation. He further testified that he had requested $300,000 for an easement and that based on Wadsworth's subsequent refusal to pay that amount, he was not willing to resolve this dispute with Wadsworth. As stated above, we agree with *Weir* that an appropriating agency need only offer fair-market value to satisfy the requirement that there be an "inability to agree." However, even if we found *Weir* to be inapplicable, we conclude that under these facts, Wadsworth was reasonable in determining that an inability to agree existed.

{¶ 22} Moreover, the law does not require an appropriating agency to enter into protracted and likely fruitless negotiations with property owners. Nor does it require an agency to entertain counteroffers of several times greater than the fair-market value determination.

{¶ 23} However, even were we to find that Wadsworth did not comply with R.C. 163.59, that failure to comply would "not affect the validity of any property acquisition by purchase or condemnation." R.C. 163.52(A). Relying on R.C. 163.52(A), the *Weir* court held that a violation of R.C. 163.59 by an appropriating agency could not serve as a basis for dismissing the appropriation action. Therefore, based on *Weir* and R.C. 163.52(A), this court concludes that a

potential violation of R.C. 163.59 would not serve as a basis for dismissing Wadsworth's appropriations petitions.

{¶ 24} This court would like to make special note that although we have found that Wadsworth negotiated in good faith, the landowners have not been foreclosed from raising concerns about their land and water supply. The landowners have the right to present their concerns and justifications for a greater valuation of the easements before a jury. Under the law, a jury will decide whether the easements will affect the landowners' water supply or, in KDD's case, its ability to operate as a business, and, if so, how much such an effect is worth. See, generally, R.C. 163.09 and 163.14.

{¶ 25} Based on the foregoing, Wadsworth's assignment of error has merit.

III

{¶ 26} Wadsworth's sole assignment of error is sustained. The judgment of the Wayne County Court of Common Pleas is reversed, and the matter is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

CARR and MOORE, JJ., concur.