[Cite as *Lawnfield Properties v. The City of Mentor*, 2018-Ohio-2447.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| LAWNFIELD PROPERTIES, LLC, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2017-L-130** |
| THE CITY OF MENTOR, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2017 CV 000571.

Judgment: Affirmed.

*James V. Aveni* and *Joshua T. Morrow,* Ranallo & Aveni, L.L.C., 6685 Beta Drive, Cleveland, OH 44143 (For Plaintiff-Appellant).

*Richard A. Hennig*, Hennig, Szeman & Klammer Co., L.P.A., 10 West Erie Street, Suite 106, Painesville, OH 44077 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Lawnfield Properties, LLC, appeals the judgment of the Lake County Court of Common Pleas granting appellee, the city of Mentor's, Civ.R. 12(B)(6) motion to dismiss appellant's amended complaint for an injunction. This case involves the taking by Mentor of a strip of appellant's property for a road-widening project. The main issue is whether the trial court erred in finding that the Lake County Probate Court,

rather than the trial court, has jurisdiction to adjudicate appellant's entitlement to residual damages. For the reasons that follow, we affirm.

{¶2} The statement of facts that follows is derived from appellant's amended complaint and its attachments. Appellant owns a hotel/restaurant on Mentor Ave. in Mentor, Ohio. In early 2016, Mentor advised appellant that it intended to appropriate a strip of frontage of its property along Mentor Ave. for the purpose of widening that road. Shortly thereafter, appellant attended an on-site meeting with Dennis Keeney, Mentor's appraiser, during which appellant advised him of specific items of residual damage that it expected as a result of the appropriation. These included the relocation of a sign, the loss of parking spaces in its parking lot, the loss of one of its multiple curb cuts, and the temporary loss of use of its outdoor patio and swimming pool during construction of the project.

{¶3} Mr. Keeney, in his April 13, 2016 appraisal report, concluded the fair market value of the property to be appropriated was $37,665. He further concluded that the instant appropriation would not result in residual damage.

{¶4} On June 20, 2016, Mentor provided appellant with a copy of Mr. Keeney's appraisal and a formal offer to purchase the property for the amount determined by Mr. Keeney to be the fair market value of the property.

{¶5} One month later, on July 22, 2016, appellant's counsel sent a letter to Mentor, rejecting its offer, citing Mr. Keeney's failure to appraise the value of appellant's anticipated residual damage. In that letter, appellant's counsel stated that appellant had retained another appraiser, Tom Horner, to evaluate Mr. Keeney's appraisal, and that appellant would provide a settlement demand to Mentor once Mr. Horner completed his

review. However, appellant never provided Mentor with its own appraisal or with a settlement demand. On October 11, 2016, appellant's counsel sent Mentor a second letter supplementing his first. In this letter, appellant's counsel asserted that the city's reliance on Mr. Keeney's appraisal was "unwarranted" and "unlawful" and accused Mentor of not making a good faith offer. Contrary to appellant's argument on appeal, his counsel in these two letters *never* asked Mentor to obtain an amended appraisal to value its residual damage or to present a new offer in accord with same; appellant simply rejected Mentor's offer.

{¶6} On October 24, 2016, Mentor initiated appropriation proceedings by serving appellant with its Notice of Intent, which included Mr. Keeney's appraisal and Mentor's "good faith offer" to purchase the property based on Mr. Keeney's appraisal.

{¶7} Thereafter, on December 22, 2016, Mentor filed an appropriation action in the Lake County Probate Court, *Mentor v. Lawnfield Properties, LLC*, Case No. 16-CV-189, which remains pending. Appellant concedes that, because Mentor's appropriation action was a "quick take" for road construction purposes, appellant was statutorily barred from seeking to enjoin Mentor from the actual taking of the property.

{¶8} Instead, on April 13, 2017, appellant filed a complaint for an injunction in the trial court (general division), alleging that Mentor's appropriation action was procedurally defective because it failed to include a good faith offer that compensated appellant for the alleged residual damage to its property. In its amended complaint, appellant requested that the trial court enjoin Mentor from pursuing its appropriation action until such time as Mentor obtains an amended appraisal that values appellant's residual damage and makes an offer based on such amended appraisal.

3

{¶9} On June 1, 2017, Mentor filed a Civ.R. 12(B)(6) motion to dismiss appellant's complaint for failure to state a claim. After considering the parties' briefs, the trial court granted Mentor's motion to dismiss, finding that appellant's challenge "should be brought before the Lake County Probate Court in the pending appropriation case where the issue of just compensation can be determined." Appellant appeals the trial court's judgment, asserting two assignments of error. For its first, it alleges:

{¶10} "The trial court erred by holding that the Lake County Probate Court maintains competent jurisdiction to rule upon Lawnfield's request for injunctive relief."

{¶11} **I. THE PROBATE COURT RETAINS JURISDICTION TO PROCEED TO JURY TRIAL ON THE ISSUE OF JUST COMPENSATION, INCLUDING APPELLANT'S ALLEGED ENTITLEMENT TO RESIDUAL DAMAGES.**

{¶12} "Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo." *Bank of N.Y. Mellon Trust Co. v. Shaffer*, 11th Dist. Geauga No. 2011-G-3051, 2013-Ohio-3205, ¶33. Two courts have potential subject-matter jurisdiction in appropriation matters: the common pleas court and the probate court of the county in which the property is located. R.C. 163.01(D). The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation. *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, ¶11.

{¶13} Our decision in this matter requires a review of Ohio's Eminent Domain Act, at R.C. Chapter 163. Appellant does not argue that any section of the Act is ambiguous or unclear. "'Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of

4

statutory interpretation. To interpret what is already plain is not interpretation, but legislation, which is not the function of the courts, but of the general assembly. * * * An unambiguous statute is to be applied, not interpreted.'" *Sears v. Weimer*, 143 Ohio St. 312, 316 (1944), quoting 37 Ohio Jurisprudence, 514, Section 278.

**{¶14}** R.C. 163.04(B) requires that an appropriating agency provide a "good faith offer" to purchase real property before filing its petition for appropriation. Further, an agency may appropriate the property only after the agency obtains an appraisal of the property and provides a copy of it to the owner. R.C. 163.04(C).

**{¶15}** R.C. 163.59(D) provides that the amount offered by the agency shall not "be less than the agency's approved appraisal of the fair market value of the property." An appraisal is defined as "a written statement *independently and impartially prepared by a qualified appraiser* setting forth an opinion of defined value of * * * property * * *, supported by the presentation and analysis of relevant market information." (Emphasis added.) OAC 5501:2-5-01(B)(3).

**{¶16}** R.C. 163.59(D) also requires the agency to state in its offer the just compensation for (1) the property acquired and for (2) any residual damage to the property after the taking. "Residual damage" is damage to the portion of property remaining after the other portion is taken. Such damage is measured by the difference between the pre- and post-appropriation fair market value of the residue. *Hilliard v. First Industrial., L.P.*, 158 Ohio App.3d 792, 2004-Ohio-5836, ¶5 (10th Dist.). Upon receipt of a good faith offer, the owner is permitted to present material that the owner believes is relevant to determining the fair market value of the property and to suggest

5

modifications in the proposed terms of the acquisition. R.C. 163.59(D). However, the agency is merely required to "consider" the landowner's presentation. *Id.*

{¶17} Further, R.C. 163.08 establishes what issues the owner can contest in an appropriation action. That statute provides, in pertinent part:

{¶18} Any owner may file an answer to such petition. * * * The agency's right to make the appropriation, the inability of the parties to agree, and the necessity for the appropriation shall be resolved by the court in favor of the agency unless such matters are specifically denied in the answer * * *, *provided, when taken * * * for the purpose of making or repairing roads, which shall be open to the public, * * * an answer may not deny the [agency's] right to make the appropriation,* the inability of the parties to agree, or the necessity for the appropriation. * * * (Emphasis added.)

{¶19} Appellant argues that R.C. 163.08 divests the appropriating court, here, the probate court, of subject-matter jurisdiction to hear a landowner's challenge to the authority of the appropriating agency when the purpose of the take is to build a public road. Appellant further argues that R.C. 163.08 permits a landowner to proceed in a separate action in the general division to enjoin the appropriation proceedings and that the general division has exclusive jurisdiction to determine the agency's authority to appropriate. In support, appellant cites *Cleveland v. Brook Park,* 103 Ohio App.3d 275, 280-281 (8th Dist.1995).

{¶20} Specifically, appellant argues that, because Mentor's offer was based on an appraisal that did not include compensation for residual damage, the offer was not a good faith offer. As such, appellant argues that Mentor lacks authority to pursue its appropriation action and that the probate court lacks jurisdiction to adjudicate the action. Thus, appellant argues it is entitled to an injunction to prevent Mentor from pursuing its appropriation action in the probate court until Mentor: (1) obtains an amended appraisal

6

(that includes an amount for residual damage) and then (2) amends its offer to reflect such amended appraisal.

**{¶21}** In contrast, Mentor argues that appellant is not challenging Mentor's authority to appropriate. Rather, Mentor argues that appellant's residual-damage argument is merely a challenge to *the methodology* employed by Mr. Keeney in preparing his appraisal and to the *amount* of the appraisal and that, unlike a challenge to the agency's authority, this does not provide grounds for a separate injunction action. Further, Mentor argues that, per R.C. 163.59, its offer was not required to include an amount for residual damage (since its appraiser determined there was no such damage), but that, even if it was, Mentor's failure to include such amount would not provide grounds to dismiss the appropriation case in probate court. In support, Mentor relies on *Wadsworth v. Yannerilla*, 170 Ohio App.3d 264, 2006-Ohio-6477 (9th Dist.).

**{¶22}** In *Wadsworth*, the Ninth District stated that "R.C. 163.59(D) requires that an appropriating agency establish an amount it considers just compensation for the property and that that amount be no less than the approved and appraised fair-market value." *Wadsworth* at ¶19. Thus, "if an agency presents a landowner with a fair-market valuation, it has complied with R.C. 163.59." *Wadsworth, supra*. "Further, and more important, the requirement of R.C. 163.04 is satisfied by an appropriating agency's offer of a fair-market valuation on the property." *Wadsworth, supra*. The court held that "an offer of fair-market value constitutes a valid attempt to reach agreement with the landowners" and that because "Wadsworth made such an offer," it "negotiated in good faith." *Id*.

7

{¶23} Further, the Ninth District, in *Wadsworth,* considered an argument similar to the one made by appellant here. The appellants in *Wadsworth* argued that the city had failed to negotiate in good faith because it did not consider their concerns regarding the effect of the appropriation on their private wells and farming operation. The Ninth District rejected this argument, holding:

{¶24}   Wadsworth was not required to provide the landowners with any guarantees, *nor was it required to respond to [their] concerns.* Wadsworth was required to tender an offer of fair-market value, to give the landowners reasonable time to contemplate the offer, and to consider the landowners' presentations and suggestions. R.C. 163.59(D). The record indicates that Wadsworth complied with the requirements of R.C. 163.59(D). (Emphasis added.) *Wadsworth* at ¶20.

{¶25} In any event, the Ninth District, in *Wadsworth*, *supra*, held that, even if the city failed to comply with any of the procedural requirements in R.C. 163.59, this would not justify dismissal of the appropriation. *Wadsworth* at ¶23. The Ninth District noted that R.C. 163.52(A) provides: "The failure of an acquiring agency to satisfy a requirement of section 163.59 of the Revised Code does not affect the validity of any property acquisition by * * * condemnation." The Ninth District explained:

{¶26}   [E]ven were we to find that Wadsworth did not comply with R.C. 163.59, that failure to comply would "not affect the validity of any property acquisition by * * * condemnation." R.C. 163.52(A). Relying on R.C. 163.52(A), the [Eighth District, in *Weir v. Kebe,* 29 Ohio App.3d 53, 55 (8th Dist.1985),] held that *a violation of R.C. 163.59 by an appropriating agency could not serve as a basis for dismissing the appropriation action.* Therefore, based on *Weir* and R.C. 163.52(A), this court concludes that *a potential violation of R.C. 163.59 would not serve as a basis for dismissing Wadsworth's appropriation petitions. Wadsworth* at ¶23. (Emphasis added.)

{¶27} However, after holding that a potential violation of R.C. 163.59 would not affect the validity of the taking, the Ninth District in *Wadsworth* was quick to point out:

8

{¶28} [A]lthough we have found that Wadsworth negotiated in good faith, the landowners have not been foreclosed from raising concerns about their land and water supply. The landowners have the right to present their concerns and justifications for a greater valuation of the [appropriated] easements before a jury. Under the law, a jury will decide whether the easements will affect the landowners' water supply or, in [the case of one of the appellants], its ability to operate as a business, and, if so, how much such an effect is worth. *See, generally,* R.C. 163.09 and 163.14. *Wadsworth, supra*, at ¶24.

{¶29} Significantly, appellant does not attempt to distinguish or even mention *Wadsworth,* the logic of which we find persuasive. Applying the principles set forth in *Wadsworth* here, since Mentor offered appellant the fair market value of its property, as determined by its appraiser, the offer was made in compliance with R.C. 163.04 and 163.59 and thus was made in good faith. Further, Mentor gave appellant reasonable time, i.e., six months, to contemplate the offer, and Mr. Keeney considered appellant's presentation regarding residual damage, thus fully complying with R.C. 163.59(D). Mr. Keeney, as a certified appraiser, exercised his independent judgment in arriving at the fair market value of appellant's property and then provided this amount to Mentor, which the city then offered to appellant. While Mentor was required to "consider" appellant's information regarding residual damage, per R.C. 163.59(D), Mentor was not required to act on it. However, even if Mentor was required by R.C. 163.59(D) to offer an amount for appellant's residual damage, Mentor's failure to do so would not affect the validity of the appropriation or justify its dismissal. R.C. 163.52(A).

{¶30} Further, since appellant's argument concerns the *amount of compensation* to which it claims to be entitled (which is within the probate court's jurisdiction) rather than *Mentor's authority to appropriate* (which is not within that court's jurisdiction), the trial court did not err in concluding that the probate court has jurisdiction to proceed with

9

the compensation trial at which appellant will be free to present to the jury whatever relevant evidence it wishes on the issue of just compensation, including its residual damage.

{¶31} For its second and last assigned error, appellant contends:

{¶32} "The trial court erred in granting Mentor's Motion to Dismiss Lawnfield's Complaint for its alleged failure to state a claim."

{¶33} **II. APPELLANT'S COMPLAINT FAILED TO STATE A CLAIM FOR BAD FAITH AGAINST MENTOR.**

{¶34} This court has held that "'[a] motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint.'" *Manigault v. Chilson*, 11th Dist. Trumbull No. 2015-T-0037, 2015-Ohio-5223, ¶9, quoting *State ex rel. Hanson v. Guernsey Cty. Bd. Of Commrs.*, 65 Ohio St.3d 545, 548 (1992). In considering the propriety of the dismissal, "we accept all factual allegations in the complaint as true and draw all reasonable inferences in the non-moving party's favor." *Transky v. Ohio Civil Rights Comm'n.*, 193 Ohio App.3d 354, 2011-Ohio-1865, ¶11 (11th Dist.). If, after considering the complaint accordingly, there is no set of facts consistent with appellant's allegations that would permit recovery, the judgment of dismissal will be affirmed. *Id.* A court of appeals reviews a trial court's judgment dismissing a complaint pursuant to Civ.R. 12(B)(6) using a de novo standard. *Goss v. Kmart Corp.*, 11th Dist. Trumbull No. 2006-T-0117, 2007-Ohio-3200, ¶17.

{¶35} The sole ground offered by appellant in opposition to Mentor's motion to dismiss is that appellant's complaint stated a claim "for Mentor acting in bad faith" by not providing a good faith offer. However, because we hold Mentor's offer was made in

10

good faith, it follows that the complaint failed to state a claim. Our holding renders moot appellant's arguments under this alleged error. "However, courts are vested with the jurisdiction to address moot issues when such issues are capable of repetition yet evade review. * * * Courts are also vested with jurisdiction to address moot issues when those issues concern an important public right or a matter of great public or general interest." *Citizens Word v. Canfield Twp.*, 152 Ohio App.3d 252, 2003-Ohio-1604, ¶18 (7th Dist.). While appellant's arguments are largely moot, a few points are worth mentioning.

{¶36} Appellant argues that Mr. Keeney failed to even consider the possibility of residual damages, as evidenced by the following language in his appraisal:

> {¶37} The purpose of this appraisal report is to estimate the compensation for the land taken * * *. This report has been developed in compliance with [the Uniform Standards of Professional Appraisal Practice] and with Section 5501:2-5-06(C) of the Ohio Administrative Code. This report is used when the acquisition is a partial taking and it is apparent the taking creates a simplistic valuation problem with no loss in market value of the residue property (damages), and the estimated compensation is $65,000 or less.

{¶38} However, this language does not support appellant's bad-faith argument. Rather, it shows Mr. Keeney complied with professional standards for appraisers in concluding the taking would not result in residual damage.

{¶39} Contrary to appellant's argument, appellant's counsel never asked Mentor to obtain an amended appraisal to compensate for residual damage and thus Mentor never refused to comply with such request. While appellant argues that, per R.C. 163.59(D), Mentor was required to amend its appraisal to include compensation for residual damage, nothing in that statute suggests that an appraiser is required to amend

11

his appraisal to include compensation for residual damage after previously concluding, based on the information provided to him by the owner, that the property will not sustain such damage.

{¶40} Further, in arguing that Mentor had the statutory obligation to obtain an amended appraisal to compensate appellant for its alleged residual damage, appellant misconstrues R.C. 163.59(E). That section provides, in pertinent part: "*If information presented by the [land]owner * * * indicates the need for new appraisal information*, * * * the head of the acquiring agency concerned shall have the appraisal updated or obtain a new appraisal." (Emphasis added.) However, since Mr. Keeney concluded appellant would not sustain residual damage, Mentor reasonably concluded that appellant's information did not indicate the need for an amendment.

{¶41} Finally, the facts contained in the complaint and its attachments support a finding that the complaint failed to state a claim for bad faith: (1) Mentor presented an offer to appellant of fair market value as determined by its appraiser; (2) Although appellant's counsel advised Mentor that appellant had retained its own appraiser by July 2016, appellant never submitted an appraisal challenging Mr. Keeney's appraisal; and (3) the complaint does not challenge Mr. Keeney's qualifications.

{¶42} Assuming the truth of the allegations in the amended complaint and drawing all inferences to be drawn therefrom in favor of appellant, as we are required to do, the trial court did not err in implicitly finding that appellant's complaint failed to state a claim against Mentor.

12

{¶43} For the reasons stated in this opinion, the assignments of error lack merit and are overruled. It is the order and judgment of this court that the judgment of the Lake County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, P.J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only.