[Cite as *State ex rel. Ohio History Connection v. Moundbuilders Country Club Co.*, 2020-Ohio-276.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE ex rel. OHIO HISTORY CONNECTION | JUDGES:<br>Hon. William B. Hoffman, P. J.<br>Hon. John W. Wise, J. |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, J. |
| -vs- | |
| THE MOUNDBUILDERS COUNTRY CLUB COMPANY | Case No. 2019 CA 00039 |
| Defendant-Appellant<br>and | |
| PARK NATIONAL BANK | |
| Defendant-Appellee | O P I N I O N |

CHARACTER OF PROCEEDING:       Civil Appeal from the Court of Common
                                                        Pleas, Case No.  18 CV 01284

JUDGMENT:                                   Affirmed

DATE OF JUDGMENT ENTRY:       January 29, 2020

APPEARANCES:

For Plaintiff-Appellee                      For Defendant-Appellant

DAVE YOST                                   JOSEPH A. FRALEY
OHIO ATTORNEY GENERAL          JOSHUA M. FRALEY
KEITH O'KORN                             MITCHELL & PENCHEFF, FRALEY,
JENNIFER S. M. CROSKEY             CATALANO & BODA
30 East Broad Street, 26th Floor    580 South High Street, Suite 200
Columbus, Ohio  43215                  Columbus, Ohio  43215

                                                        J. ANDREW CRAWFORD
                                                        REESE PYLE MEYER PLL
                                                        36 N. Second Street, P. O. Box 919
                                                        Newark, Ohio  43058

*Wise, J.*

{¶1} Defendant-Appellant Moundbuilders Country Club Company ("MBCC") appeals the decision of the Licking County Court of Common Pleas, which granted appropriation, in favor of Plaintiff-Appellee Ohio History Connection ("OHC"), of certain real property in Newark, Ohio, which was being leased by appellant for use as a private golf course. The relevant facts leading to this appeal are as follows.

{¶2} The property in question in this dispute, located on North 33rd Street in Newark, is the site of several ancient Native American earthworks, constructed by the Hopewell culture more than 2,000 years ago. Of particular note at the site are the "Octagon Earthworks," consisting of approximately 134 acres these earthen structures, including a 1054-foot diameter circle, connected to an even larger octagonal enclosure. This is all part of a much larger complex – some of it destroyed in the past by European settlers – that once existed in what is now the Newark area. The Octagon Earthworks align at certain points with the 18.6-year cycle of with the rising and setting of the moon, and they reveal among other things that the Hopewell culture had a sophisticated understanding of mathematics, geometry, and astronomy.

{¶3} Efforts by Newark citizen groups to preserve earthworks in the area began as early as 1853. In the past, some of the land was utilized at various times, *inter alia*, as a fairground, a National Guard training area, and an amusement park site. *See* Exhibit 15: <u>The Newark Earthworks: Enduring Monuments, Contested Meanings</u>, University of Virginia Press, 2016, at 27-30.

{¶4} Appellant has been leasing the property in question in this matter since 1910. It has been during that time in continuous use as an 18-hole golf course and country

club, and there are or have been additional tenant-owned improvements on the land, including a two-story clubhouse, tennis courts, a swimming pool, a locker room/office building, and a large maintenance building. Appellant first leased the property from the Board of Trade of Newark. However, in 1933, Ohio History Connection (then known as the Ohio State Archaeological and Historical Society) acquired the property and became the lessor to appellant in 1938. The current lease, entered into in 1998, gives appellant the right to occupy the property until 2078, subject to periodic renewals.

{¶5} In addition, in 2003, the parties entered into an additional agreement that designated a schedule for public access to the property. This agreement allowed year-round public access to a portion of the property known as the "observation platform" during daylight hours. It also allowed public access to the entire property on certain restricted days and times. In particular, it allowed public access to the entire property on four additional days during the summer and on days where golf is prohibited due to course conditions.

{¶6} Among other things, appellee has expressed an intention to file an application regarding the property for obtaining a World Heritage designation under the United Nations Educational Science and Cultural Organization (UNESCO). Tr. at 273. As of the spring of 2019, there were 23 "designated" World Heritage sites in the United States; however, none of them are in Ohio. Tr. at 338-339.

{¶7} On August 28, 2018, prior to the underlying appropriation action being filed, appellee sent appellant a written "notice of intent to acquire and good faith offer," which included an offer of $800,000.00 as compensation for appellant's leasehold interest. However, as further discussed *infra*, appellee was at that time already in possession of

an earlier appraisal of $1,750,000.00, which it decided not to provide to appellant, and of which appellant became aware after the commencement of litigation.

**{¶8}** On October 18, 2018, the Board of Appellee OHC passed a resolution entitled "Declaring Intent to Appropriate a Leasehold Estate for the Preservation and Improvement of a Prehistoric Site or Monument."

**{¶9}** On November 28, 2018, Appellee OHC filed a petition to appropriate the subject property in the Licking County Court of Common Pleas. Appellant MBCC filed an answer and a counterclaim for breach of lease/contract on January 10, 2019. Appellant in particular denied two issues: (1) that appellee has the right to invoke eminent domain proceedings to appropriate the lease; and (2) that the appropriation is necessary to achieve a public purpose.

**{¶10}** The trial court first entered a judgment on March 7, 2019 which granted appellee's motion to dismiss appellant's counterclaims.

**{¶11}** Subsequently, the trial court arranged a necessity hearing as required by R.C. Chapter 163. The hearings went forward on March 18, 19, and 20, 2019, and April 8, 2019. Appellee called six witnesses over the first two days, including two professional archaeologists and a representative of the National Park Service. Appellant subsequently called numerous witnesses, commencing with MBCC's president.

**{¶12}** Following these hearings, on May 10, 2019, the trial court entered a "decision and order granting [appellee's] petition to appropriate and finding that the appropriation [was] necessary to achieve public purpose."

**{¶13}** On June 4, 2019, Appellant MBCC filed a notice of appeal. It herein raises the following three Assignments of Error:

**{¶14}** "I. THE TRIAL COURT ERRED IN ITS CONCLUSION THAT PLAINTIFF-APPELLEE NEGOTIATED IN GOOD FAITH AND THEREFORE SUBJECT MATTER JURISDICTION WAS NOT LACKING.

**{¶15}** "II. THE TRIAL COURT ERRED IN ITS DETERMINATION THAT PLAINTIFF-APPELLEE ESTABLISHED THAT THE TAKING WAS NECESSARY.

**{¶16}** "III. THE TRIAL COURT ERRED IN ITS DECISION TO DISMISS DEFENDANT-APPELLANT'S COUNTERCLAIMS."

I.

**{¶17}** In its First Assignment of Error, Appellant Moundbuilders contends the trial court erred in finding the existence of subject matter jurisdiction via its conclusion that Appellee OHC had negotiated in good faith for buying out appellant's lease interest. We disagree.

**{¶18}** R.C. Chapter 163 addresses the appropriation of property by public and private "agencies." Pursuant to R.C. 1743.07, certain historical preservation associations or societies may acquire necessary real estate in accordance with R.C. 163.01 to 163.22, inclusive. R.C. 163.05 states in part as follows: "An agency that has met the requirements of sections 163.04 and 163.041 of the Revised Code, may commence proceedings in a proper court by filing a petition for appropriation of each parcel or contiguous parcels in a single common ownership, or interest or right therein. The petition of a private agency shall be verified as in a civil action."

**{¶19}** In the present context, "[t]he purpose of an appropriation award is to compensate the leaseholder for the value of his appropriated interest." *See City of Springdale v. Burns*, 1st Dist. Hamilton No. C-010002, 2001 WL 1386184. For cases

involving taking property for public welfare, a leasehold interest is considered private property. *Pokorny v. Local 310, Intern. Hod Carriers, Bldg. Common Laborers Union*, 35 Ohio App.2d 178, 185, 300 N.E.2d 464, 469 (8th Dist.1973), reversed on other grounds 38 Ohio St.2d 177, 311 N.E.2d 866 (1974). The agency seeking to appropriate property must *inter alia* satisfy the requirements set forth in R.C. 163.04. Among other things, the appropriating agency, at least 30 days before filing a petition "shall provide an owner with a written good-faith offer to purchase the property." R.C. 163.04(B). This good-faith offer requirement was codified in the revisions made to R.C. 163.04 and 163.041, enacted on October 10, 2007.

{¶20} The appropriation of property is a special statutory proceeding governed by R.C. 163 et seq. *See Dublin v. Beatley*, 5th Dist. Delaware No. 16 CAE 040021, 70 N.E. 3d 976, 2016-Ohio-5606, ¶ 16. Such provisions are strictly construed against the governmental agency. *See Willard v. City of Columbus,* 10th Dist. Franklin No. 78AP-577, 1979 WL 208913. Furthermore, heightened scrutiny must be applied in reviewing any statutes which regulate the use of eminent domain powers. *See Norwood v. Horney,* 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 10.

{¶21} In the case *sub judice*, appellant primarily maintains that appellee failed to act in good faith in providing appellant an offer for purchasing the lease interest on the property in question.

{¶22} It appears factually undisputed that prior to the appropriation action being filed, appellee sent appellant a written "notice of intent to acquire and good faith offer," which included an offer of $800,000.00. Pl. Ex. 12. Before submitting the offer, appellee had actually acquired two appraisals of the property. The earlier "Weiler Appraisal,"

(Robert Weiler Group) dated January 26, 2018, valued the leasehold interest at $1,750,000.00. The later "Koon Appraisal," (Samuel Koon) dated February 28, 2018, valued the leasehold interest at $800,000.00. However, appellee did not disclose the first, higher appraisal to appellant until January 18, 2019, in response to appellant counsel's request. Appellee's CEO, Burt Logan, later testified that he had deemed it unnecessary to disclose an appraisal that appellee's board had not used in their determination of the good faith offer. He further stated that he misinterpreted the leasehold value calculation in the Weiler report.  *See* Tr. at 446.

**{¶23}**  The trial court ultimately concluded in pertinent part as follows on the "good faith" issue:

> Here, the OHC made a good faith offer by obtaining an appraisal of the fair market value of the leasehold estate from an experienced, state-certified appraiser by the name of Samuel Koon. Mr. Koon is a member of the Appraisal Institute. It delivered to the Country Club a written Notice of Intent to Acquire and Good Faith Offer on August 28, 2018, more than 30 days prior to the filing of this action, as required by R.C. Section 163.04. OHC offered $800,000.00, the full amount of that appraisal.
>
> ***
>
> The OHC's initial offer of $800,000.00 was based on a fair market appraisal as required by R.C. Section 163.04(C). The mere existence of another appraisal for a higher value does not make OHC's initial offer a bad faith offer. And Mr. Logan's testimony concerning his mistaken interpretation of the Weiler report was credible. In fact, the Court found Mr.

Logan's explanation for his misinterpretation to be completely reasonable after evaluating the report firsthand. Moreover, there was no evidence that the Country Club would have accepted the higher offer or the higher valuation had it been offered.

**{¶24}** Decision and Order, May 10, 2019, at 9, 12.

**{¶25}** Under Ohio law, good faith and bad faith are presented as opposites to each other. *See Frank v. Nationwide Mut. Ins. Co.*, 10th Dist. Franklin No. 02AP-1336, 2003-Ohio-4684, ¶ 15. "Bad faith" has been defined as "generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, * * * not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Schaad v. Buckeye Valley Local School Dist. Bd. of Edn.*, 5th Dist. Delaware No. 15 CAE 080063, 2016-Ohio-569, ¶ 24, citing *Hicks v. Leffler,* 119 Ohio App .3d 424, 429, 695 N.E.2d 777, 780 (10th Dist.1997), quoting Black's Law Dictionary (5 Ed.1979) 127 (internal quotations omitted).

**{¶26}** We have frequently emphasized that as an appellate court, we are not the trier of fact. *See, e.g., Tennant v. Martin–Auer,* 188 Ohio App.3d 768, 2010-Ohio-3489, ¶ 16, citing *Cross Truck Equip. Co. v. Joseph A. Jeffries Co.*, 5th Dist. Stark No. CA–5758, 1982 WL 2911. Our role in the present context is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his judgment. *See Matter of D.D.,* 5th Dist. Muskingum No. CT2019-0025, 2019-Ohio-4646, ¶ 12.

**{¶27}** Upon review, we find no basis to overturn the conclusion of the trial judge that appellee's CEO, who is not an attorney, misunderstood the particulars of the Weiler

appraisal, and that the Koon appraisal submission to appellant was accomplished in good faith.

**{¶28}** Appellant also maintains that appellee failed to provide appellant with a reasonable opportunity to accompany the appraiser. It cites R.C. 163.59(C), which generally states in pertinent part that ""[r]eal property to be acquired shall be appraised before the initiation of negotiations, and the owner or the owner's designated representative shall be given a reasonable opportunity to accompany the appraiser during the appraiser's inspection of the property ***." R.C. 163.59(C) also states that if the appraised value is more than $10,000.00, "the head of the acquiring agency concerned shall make every reasonable effort to provide a copy of the appraisal to the owner." Appellant thus maintains that reversal is warranted in this matter because appellee did not give appellant a reasonable opportunity to accompany either Weiler or Koon on their property inspection visits, and did not make a reasonable effort to provide the Weiler appraisal to appellant prior to the commencement of appropriation proceedings.

**{¶29}** Appellee responds in part that R.C. 163.59 only applies in cases of "displaced persons" as defined elsewhere in the statute, although it cites no case law in support. In any event, however, we note R.C. 163.52(A) states: "The failure of an acquiring agency to satisfy a requirement of section 163.59 of the Revised Code does not affect the validity of any property acquisition by purchase or condemnation." We therefore find no basis for reversal for lack of good faith on these additional grounds, as urged by appellant *supra*.

**{¶30}** Appellant's First Assignment of Error is therefore overruled.

II.

**{¶31}** In its Second Assignment of Error, Appellant Moundbuilders contends the trial court erred in its determination that appellee established that the taking of appellant's lease interest was necessary. We disagree.

**{¶32}** As an initial matter, we note appellant's observation that only about one page of the trial court's May 10, 2019 thirteen-page judgment entry granting appropriation addresses the issue of the necessity of the taking, despite four days of hearing in this matter. Ohio appellate courts have recognized that in some situations, if a trial court's judgment entry is not "sufficiently detailed," the reviewing court is "left in the unfortunate position of being unable to provide meaningful review." *Schlauch v. Schlauch*, 5th Dist. Holmes No. 14 CA 008, 2015-Ohio-577, ¶ 27, citing *Stephens v. Stephens,* 9th Dist. Wayne No. 12CA0049, 2013–Ohio–2797, ¶ 5 (additional citations omitted).

**{¶33}** Nonetheless, although Civ.R. (1)(C)(2) states that the Ohio Civil Rules "to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure *** in the appropriation of property," the Civil Rules are generally considered applicable in appropriation proceedings unless there is a specific procedural conflict. *See City of Bucyrus v. Strauch*, 3rd Dist. Crawford No. 3-99-36, 2000-Ohio-1678.

**{¶34}** In the case *sub judice*, the docket gives no indication that either party requested more extensive findings of fact and conclusions of law pursuant to Civ.R. 52. We will therefore proceed to the merits of the present assigned error.

**{¶35}** The question of necessity is subjected on appeal to a "limited standard of review." *Willoughby Hills v. Andolsek,* 11th Dist. Lake No. 2001-L-173, 2003-Ohio-323, ¶ 92. R.C. 163.09(B) provides that the owner (here, the lessee) bears the burden in the trial

court of proving that the legislative body abused its discretion in determining that an appropriation is necessary. *See Dublin, supra,* ¶ 15. As stated *supra*, we find our role in the present assigned error is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his judgment. *Matter of D.D.*, *supra*.

{¶36} When land is leased, the lessee acquires the lessor's right to the enjoyment and use of the land, and becomes the owner of the land for all practical purposes so long as the lease is in force. *Neary v. Board of Zoning Appeals*, 2nd Dist. Montgomery No. 17428, 1999 WL 960777, citing *Cooper v. Roose* (1949), 151 Ohio St. 316, 323. Generally, the power to appropriate property for public use is encompassed under the law of eminent domain, and the power is inherent in the state. *RMW Ventures, L.L.C. v. Stover Family Invest., L.L.C.*, 3rd Dist. Defiance No. 4-04-20, 161 Ohio App.3d 819, 2005-Ohio-3226, 832 N.E.2d 118, ¶ 14. "The Ohio and United States Constitutions both require that the power of eminent domain be exercised for a public purpose. Section 19, Article I, Ohio Constitution; Fifth and Fourteenth Amendments to the United States Constitution." *City of Huron v. Hanson*, 6th Dist. Erie No. E-99-060, 2000 WL 1033034.

{¶37} An essential condition of eminent domain in Ohio is the understanding that the sovereign may use its appropriation powers only upon necessity for the common good. *Norwood*, *supra*, at ¶ 43, citing *Buckingham v. Smith* (1840), 10 Ohio 288, 297. In this context, "[n]ecessity means reasonably convenient or useful to the public; it is not limited to an absolute physical necessity." *Sunoco Pipeline L.P. v. Teter*, 7th Dist. No. 16 HA 0002, 2016-Ohio-7073, 63 N.E.3d 160, ¶ 86.

**{¶38}** In its resolution in the case *sub judice*, Appellee OHC stated that it was necessary to acquire Appellant MBCC's lease on the Octagon Earthworks for the purpose of "open[ing] the restored Octagon Earthworks for public use and benefit;" "restor[ing] the Octagon Earthworks by removing the golf course related improvements;" and "nominat[ing] the Hopewell Ceremonial Earthworks to the World Heritage List to bring global recognition to the significance of this cultural site."

**{¶39}** We first note that pursuant to R.C. 163.09(B)(1)(a), "[a] resolution or ordinance of the governing or controlling body, council, or board of the agency declaring the necessity for the appropriation creates a rebuttable presumption of the necessity for the appropriation if the agency is not appropriating the property because it is a blighted parcel or part of a blighted area or slum." As such a resolution occurred in the present case, the burden thereby shifted to appellant to show a lack of necessity. Furthermore, under Ohio law, a "public park" is presumed to be a public use. *See* R.C. 163.01(H)(2).

**{¶40}** In essence, appellant presently argues that except for appellee's application for the property's inclusion on the World Heritage Site list, which is far from assured at this point, the proposed uses of the earthworks, such as a historical research area, a provider of additional educational services, and overall preservation, can all be accomplished without appropriation of the golf course leasehold, a legal action that appellant seeks to categorize as a "last resort" under the circumstances. Appellant also points out that it employs approximately 100 employees and pays approximately $1,000,000.00 in salaries each year. Tr. at 507; Def. Exh. D. Appellant also spends approximately $1,000,000.00 on local goods and services annually. *Id.* Appellant has had

long standing relationships with members and organizations in the community in addition to holding charitable outings that benefit the community and local schools. Tr. at 534, 593.

**{¶41}** Appellant also asks us to consider the fact that appellee owns and currently oversees additional earthworks located a few miles away in Hebron, Ohio, known as the "Great Circle" Earthworks. Appellant points to evidence that this property has not been well maintained by appellee. Tr. at 580-585. Evidence was adduced that this public park contains debris, fallen trees, and discarded clothes on the premises, and there are live trees growing on the mounds, which are a potential threat to the archaeological integrity resources of the earthworks. Tr. at 255-256; 607-608; Pl. Ex. 41.

**{¶42}** However, the Constitution does not require that a taking be immediately necessary, only that the taking is necessary for a public purpose. *Wadsworth v. Yannerilla*, 9th Dist. No. 06CA0019, 170 Ohio App.3d 264, 2006-Ohio-6477, 866 N.E.2d 1113, ¶ 12.

**{¶43}** Certainly, with the possible exception of the MBCC clubhouse having "truncated" part of the earthwork circle (*see* Tr. at 175), we find little in the record before us to indicate that appellant has neglected proper stewardship of the Octagon Earthworks over the many past decades of use as a country club. *See, also,* Decision at 10. Nonetheless, we hold the trial court had before it extensive evidence and testimony to adequately support its conclusion that the present arrangement, in the interest of optimal usage and preservation, now needs to give way to full public access to these geographic remnants left by the prehistoric Native American inhabitants of this region.

**{¶44}** Appellant's Second Assignment of Error is therefore overruled.

III.

**{¶45}** In its Third Assignment of Error, appellant argues the trial court erred in its decision to dismiss its counterclaim for declaratory judgment and breach of contract.

**{¶46}** In its March 7, 2019 judgment entry (issued approximately two months prior to the decision and order granting appellee's petition to appropriate), the trial court determined that a dismissal of appellant's counterclaim was proper and that said counterclaim was in effect a collateral attack on the pending appropriation action. The trial court further found that the matter before it was a special statutory proceeding and, as such, no counterclaims would be permitted.

**{¶47}** Thereafter, in its May 10, 2019, judgment entry finding it was necessary for appellee to appropriate the lease in order to achieve a public purpose, the court ordered the case to proceed to a jury trial on September 10, 2019, in order to "determine the compensation owed to the Country Club." Judgment Entry, May 10, 2019, at 13. However, appellant filed its notice of appeal to this Court prior to said trial date.

**{¶48}** If an order is not final and appealable, then we have no jurisdiction to review the matter and must dismiss it. *Meier v. Meier*, 5th Dist. Fairfield No. 16-CA-42, 2017-Ohio-1109, ¶ 9. We note R.C. 2505.02(B)(7) includes as a final appealable order *** "[a]n order in an appropriation proceeding that may be appealed pursuant to division (B)(3) of section 163.09 of the Revised Code." In turn, R.C. 163.09(B)(3) states in pertinent part as follows, subject to certain exceptions: "An owner has a right to an immediate appeal if the order of the court is in favor of the agency in any of the matters the owner denied in the answer ***." Such an order in an appropriation proceeding may be appealed only

pursuant to R.C. 163.09(B)(3). *See Nau v. Martins Ferry*, 7th Dist. Belmont No. 13 BE 24, 2014-Ohio-2466, ¶ 19.

**{¶49}** Notably, neither the aforesaid March 7th nor May 10th judgment entries include any Civ.R. 54(B) language. While this Court has addressed *supra* appellant's appeal in the case *sub judice* because an owner (in this instance a leaseholder) has a special statutory right to an immediate appeal where a trial court has ruled on certain matters in favor of an agency seeking appropriation, we find under these procedural circumstances that appellant's challenge to the dismissal of its counterclaim and related relief must await the trial court's final determination of compensation for the appropriation. "We have recognized that to qualify as final and appealable, a trial court's order must satisfy the requirements of R.C. 2505.02, and if the action involves multiple claims and/or multiple parties *and the order does not enter judgment on all the claims* and/or as to all parties, the order must also satisfy Civil Rule 54(B) by including express language that 'there is no just reason for delay.'" *Snouffer v. Snouffer*, 5th Dist. Morgan No. 16 AP 0008, 2017-Ohio-2790, ¶ 34 (emphasis added).

**{¶50}** Appellant's Third Assignment of Error is therefore found to be premature.

**{¶51}** For the foregoing reasons, the judgment of the Court of Common Pleas, Licking County, Ohio, is hereby affirmed.

By: Wise, J.

Hoffman, P. J., and

Delaney, J., concur.

JWW/d 0115